H—— L——, on behalf of herself and all others similarly situated, Plaintiff and Appellant,

v.

Honorable Scott M. MATHESON, individually and in his capacity as Governor of the State of Utah, and Honorable Robert B. Hansen, individually and in his capacity as Attorney General of the State of Utah, Defendants and Respondents.

No. 16249.

Supreme Court of Utah.

Dec. 6, 1979.

Probable Jurisdiction Noted Feb. 25, 1980.
See 100 S.Ct. 1077.

David S. Dolowitz of Parsons, Behle & Latimer, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Joseph P. McCarthy, Paul M. Tinker, Asst. Attys. Gen., Salt Lake City, for defendants and respondents.

MAUGHAN, Justice:

Plaintiff, seeking declaratory and injunctive relief, initiated this action for the purpose of having Section 76–7–304(2) declared unconstitutional and to enjoin the enforcement thereof. The trial court found the

provision constitutionally valid, and plaintiff appeals therefrom. The judgment is affirmed. All statutory references are to the 1953 Utah Code Annotated, as amended.

Plaintiff, a fifteen year old girl, alleged she was pregnant with an unwanted child. She asserted she was in her first trimester of pregnancy. She claimed she did not wish to inform her parents of her condition, and she believed it to be in her best interests not to impart such information to her parents. She averred, she was determined to secure an abortion after consultation with her counselor.

Plaintiff consulted her physician. He advised her, under Section 76–7–304(2), he could not and would not perform the abortion, without first notifying her parents.

Section 76–7–304, provides:

To enable the physician to exercise his best medical judgment, he shall:

(1) Consider all factors relevant to the well-being of the woman upon whom the abortion is to be performed including, but not limited to,

(a) Her physical, emotional and psychological health and safety,

(b) Her age,

(c) Her familial situation.

(2) Notify, if possible, the parents or guardian of the woman upon whom the abortion is to be performed, if she is a minor or the husband of the woman, if she is married.

This provision is part of the criminal code, as provided in Section 76–7–314(3). Such may be punishable by imprisonment for a term not exceeding one year, as provided in Section 76–3–204(1); together with a fine not exceeding $1,000, pursuant to Section 76–3–301(3).

Plaintiff proceeded in a class action, asserting the statute constituted an invasion of privacy of each member of the class, whom she represented. Specifically, she claimed the right of privacy encompassed the right to have an abortion, particularly in the first trimester of pregnancy, free from regulation or interference by the State of Utah. She urged the statute unconstitutionally infringed the right of privacy and thus violated the Fourteenth Amendment of the Constitution of the United States. She further asserted the statute was an overly broad regulation, which interfered with her right to consult freely with her treating physician, and to secure treatment, where appropriate, in the effectuation of an abortion without any compelling State interest in such regulation.

In its order denying a temporary restraining order, the trial court found plaintiff had made no special showing of detriment which might result if her parents were notified except for plaintiff's allegations she did not wish to inform her parents, and believed it was in her best interests to withhold this information. The trial court further found the identity of the parents was known or could be easily ascertained by the consulting physician. The trial court concluded, while a State may not regulate or interfere with the decision of an adult woman, and that of her physician, to terminate an unwanted pregnancy during the first trimester, there was no binding decision, which precluded a State from enacting a legislative provision requiring a physician to notify the parents of a minor prior to performing an abortion.

The trial court entered a judgment, dismissing plaintiff's action. The trial court found plaintiff was unmarried, fifteen years of age, resided at home, was a dependent of her parents, and was in the first trimester of her pregnancy at the time her complaint was filed. The Court further ruled plaintiff was an appropriate representative to represent the class she purported to represent. The trial court interpreted Section 76–7–304(2) as requiring the treating physician to notify, if it be physically possible, viz., if he knows or can determine the identity of the parents of a minor, and he is physically able to notify them, that he do so prior to the performance of an abortion upon a minor. The trial court ruled, as thus interpreted, the statute was valid and did not unconstitutionally restrict the right

of privacy of a minor to secure an abortion, or to enter into a doctor-patient relationship.

On appeal, plaintiff contends Section 76–7–304(2), as interpreted by the trial court, violates the Fourteenth Amendment of the Constitution of the United States. She urges, in the first trimester, the State cannot interfere at all with the fundamental interest of the pregnant woman in making an abortion decision in consultation with her physician. In the alternative, plaintiff contends this overly-broad regulation of the exercise of constitutionally protected rights can be so construed as to be valid. Specifically, plaintiff urges the term "if possible" be interpreted as conferring on the physician and patient the discretion to determine if medically, socially, psychologically, and physically it would be appropriate to notify the minor's parents.

In *Roe v. Wade*[1] the Court ruled the right of privacy, found in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, is broad enough to encompass a woman's decision as to whether to terminate her pregnancy. This right of personal privacy, including the abortion decision is not unqualified and must be considered against state interests in regulation. However, a regulation limiting a fundamental right may be justified only by a compelling state interest. Furthermore, such legislative enactments must be narrowly drawn to express only the legitimate state interests at stake.

The Court ruled in *Roe v. Wade*,[2] with respect to the stage prior to approximately the end of the first trimester, "[T]he attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State."

It further held the State may place increasing restrictions on abortion as the period of pregnancy lengthens, so long as those restrictions are tailored to the recognized state interests. The Court stated:

. . . The decision vindicates the right of the physician to administer medical treatment according to his professional judgment up to the points where important state interests provide compelling justifications for intervention. Up to those points, the abortion decision in all its aspects is inherently, and primarily, a medical decision, and basic responsibility for it must rest with the physician. If an individual practitioner abuses the privilege of exercising proper medical judgment, the usual remedies, judicial and intra-professional are available.[3]

In the companion case of *Doe v. Bolton*[4] the Court ruled the abortion determination, so far as the physician is concerned, is made in the exercise of his best clinical judgment in the light of all the attendant circumstances. The physician may range farther afield wherever his medical judgment, properly and professionally exercised, so dictates and directs him. His "medical judgment may be exercised in the light of all factors physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors relate to health. This allows the attending physician the room he needs to make his best medical judgment. And it is room that operates for the benefit, not the disadvantage, of the pregnant woman."

The aforecited factors, which the physician may consider in making his best medical judgment were incorporated in subsection (1) of Section 76–7–304, the challenged statute. The notification provision of subsection (2) is substantially and logically related to the factors in subsection (1), for it is the parent of the minor, who would frequently possess additional information, which might prove invaluable to the physi-

1. 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147.

2. 410 U.S. 163, 93 S.Ct. 732.

3. 410 U.S. 165–166, 93 S.Ct. 733.

4. 410 U.S. 179, 191–192, 93 S.Ct. 739, 35 L.Ed.2d 201 (1972).

cian in exercising his "best medical judgment." The notification provision merely gives the parents the option to respond and to consult with the physician and child. The statute does not confer a veto-power on anyone to overrule the determination of the doctor and his patient.[5]

Neither the *Roe* nor the *Doe* decision considered the issue of a pregnant minor seeking an abortion. In *Planned Parenthood of Central Missouri v. Danforth*[6] the Court ruled the State may not impose a blanket provision, requiring the consent of a parent or person in *loco parentis* as a condition for abortion of an unmarried minor during the first twelve weeks of her pregnancy. The Court explained the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary veto over the decision of the physician and his patient, to terminate the patient's pregnancy, regardless of the reason for withholding the consent.

The Court stated:

Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights. [Citations] The Court indeed, however, long has recognized that the State has somewhat broader authority to regulate the activities of children than of adults. [Citations] It remains, then, to examine whether there is any significant state interest in conditioning an abortion on the consent of a parent or person in *loco parentis* that is not present in the case of an adult.

It was urged before the court the State had a substantial interest in safeguarding the family unit and parental authority. The court responded it could not conclude conferring a veto power on the parent would strengthen the family unit or enhance parental authority and control where

the minor and nonconsenting parent were so fundamentally in conflict, and the existence of the pregnancy already had fractured the family structure.

Any independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to have become pregnant.

The Court did qualify its holding by stating it had not suggested every minor, regardless of age or maturity, might give effective consent for termination of her pregnancy. The fault of the challenged Missouri statute was it imposed a special consent provision, exercisable by a person other than the woman and her physician, as a prerequisite to a minor's termination of her pregnancy; and did so without a sufficient justification for the restriction, thus violating the strictures of *Roe* and *Doe*.

In *Carey v. Population Services International*[7] the Court cited *Planned Parenthood* and stated the right to privacy in connection with decisions affecting procreation extends to minors as well as to adults. The Court reiterated the standard, that State restrictions inhibiting privacy rights of minors are valid only if they serve a *significant state interest,* which is not present in the case of an adult.

The concurring opinion of Justice Powell in *Carey* is of particular significance in an attempt to understand his opinion in the Court's most recent decision concerning a minor's right to an abortion, *Bellotti v. Baird.*[8] In *Carey,* he said:

Requiring minors to seek parental guidance would be consistent with our prior cases. In *Planned Parenthood,* we considered whether there was 'any significant state interest in conditioning [a minor's] abortion [decision] on the consent of a parent or person in loco parentis that is not present in the case of an adult.'

---

5. The issue of parental consent for a surgical procedure on a minor child has not been presented to the court and will not be discussed.

6. 428 U.S. 52, 74–75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). .

7. 431 U.S. 678, 693, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

8. —— U.S. ——, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

[Citation] Observing that the minor necessarily would be consulting with a physician on all aspects of the abortion decision, we concluded that the Missouri requirement was invalid because it imposed 'a special-consent provision, exercisable by a person other than the woman and her physician, as a prerequisite to a minor's termination of her pregnancy and [did] so without a sufficient justification for the restriction.' Ibid. But we explicitly suggested that a materially different constitutional issue would be presented with respect to a statute assuring in most instances consultation between the parent and child. [Citations]

A requirement of prior parental consultation is merely one illustration of permissible regulation in this area. . . .[9]

In *Bellotti v. Baird*,[10] the issues of consent and notification, where a minor desired an abortion, were inextricably intertwined. However, there is language in the main *opinion* which would appear to hold unconstitutional a statutory provision requiring parental consultation or notification in every instance, without affording the pregnant minor an opportunity to receive an independent judicial determination that she is mature enough to consent or that an abortion would be in her best interests.[11]

Under the challenged statutory scheme in *Bellotti,* all minors were required to obtain the consent of both parents or in the alternative the consent of the court prior to procuring an abortion. If the minor elected to seek court consent, there was a mandatory notification of the parents of the pending court action. It was within this context Justice Powell ruled the blanket notification requirement unconstitutional. Significantly, a majority of the court refused to join in Justice Powell's opinion. Justice White dissented, and three Justices joined in the opinion of Justice Stevens, concurring in the judgment.

Justice Stevens stated:

In short, it seems to me that this case is governed by *Danforth*; to the extent this statute differs from that in *Danforth,* it is potentially even more restrictive of the constitutional right to decide whether or not to terminate a pregnancy. Because the statute has been once authoritatively construed by the Massachusetts Supreme Judicial Court, and because it is clear that the statute as written and construed is not constitutional, I agree with Mr. Justice Powell that the District Court's judgment should be affirmed. Because his opinion goes further, however, and addresses the constitutionality of an abortion statute that Massachusetts has not enacted, I decline to join his opinion.[12]

In an explanatory footnote, number 4, Justice Stevens stated:

Until and unless Massachusetts or another State enacts a less restrictive statutory scheme, this Court has no occasion to render an advisory opinion on the constitutionality of such a scheme. A real statute rather than a mere outline of a possible statute—and a real case or controversy may well present questions that appear quite different from the hypothetical questions Mr. Justice Powell has elected to address. Indeed, there is a certain irony in his suggestion that a statute that is intended to vindicate 'the special interests of the State in encouraging an unmarried pregnant minor to seek the advice of her parents in making the important decision whether or not to bear a child,' see ante, at ——, 99 S.Ct. at 3046, 61 L.Ed.2d 811, need not require notice to the parents of the minor's intended decision. That irony makes me wonder whether any legislature concerned with parental consultation would, in the absence of today's advisory opinion, have enacted a statute comparable to the one my Brethren have discussed.

In his dissent, Justice White stated:

9. 431 U.S. 709–710, 97 S.Ct. 2029.

10. Note 8, supra.

11. At p. —— of —— U.S., at p. 3052 of 99 S.Ct., at p. 818 of 61 L.Ed.2d.

12. At p. —— of —— U.S., at pp. 3054–55 of 99 S.Ct., at p. 797 of 61 L.Ed.2d.

. . . Going beyond *Danforth,* the Court now holds it unconstitutional for a State to require that in all cases parents receive notice that their daughter seeks an abortion and, if they object to the abortion, an opportunity to participate in a hearing that will determine whether it is in the 'best interests' of the child to undergo the surgery. Until now, I would have thought inconceivable a holding that the United States Constitution forbids even notice to parents when their minor child who seeks surgery objects to such notice and is able to convince a judge that the parents should be denied participation in the decision.[13]

■ From the foregoing one cannot discern a clear constitutional doctrine inhibiting the State from enacting a statute, such as, Section 76–7–304(2), which merely provides for notification, if possible, of the parents of a minor contemplating an abortion.

Under *Danforth,* the issue then is whether the statute serves "any significant state interest" that is not present in the case of an adult, which would justify as a condition precedent to the obtaining of an abortion by a minor, the notification of her parents. First and foremost, the statute does not per se impose any restriction on the minor as to her decision to terminate her pregnancy. Second, as mentioned ante, the parent is in a position to provide valuable information concerning the factors which the physician may consider in exercising his best clinical judgment. Third, the State has a special interest in encouraging (but does not require), an unmarried pregnant minor to seek the advice of her parents in making the important decision as to whether or not to bear a child.

Justice Powell in his opinion in *Bellotti* stated there were "three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child-rearing." [14] In expanding on this third reason, he observed, the guiding role of parents in the upbringing of their children justifies limitations on the freedom of minors. Further, it is a cardinal principle of this nation that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. He stated:

Properly understood, then, the tradition of parental authority is not inconsistent with our tradition of individual liberty; rather, the former is one of the basic presuppositions of the latter. Legal restrictions on minors, especially those supportive of the parental role, may be important to the child's chances for the full growth and maturity that make eventual participation in a free society, meaningful and rewarding. Under the Constitution, the State can 'properly conclude that parents and others, teachers for example, who have [the] primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility.' [Citation] [15]

The Legislature in enacting Section 76–7–304(2) has strictly limited parental involvement in the minor's abortion decision. The provision does not confer on the parent an absolute and arbitrary veto, which was found impermissible in *Danforth.* There is no basis to conclude this provision unduly burdens the constitutional right of the minor woman, in consultation with her physician, to choose to terminate her pregnancy; thus, it is constitutional.

■ Plaintiff further urges the term "if possible" in subsection (2) of Section 76–7–304 be construed as conferring on the consulting physician discretion to determine if medically, socially, psychologically, and

---

**13.** At p. —— of — U.S., at p. 3055 of 99 S.Ct., at p. 822 of 61 L.Ed.2d.

**14.** At p. —— of —— U.S., at p. 3043 of 99 S.Ct., at p. 807 of 61 L.Ed.2d.

**15.** At pp. —— – —— of — U.S., at p. 3046 of 99 S.Ct., at pp. 810–811 of 61 L.Ed.2d.

physically, it would be appropriate to notify the minor's parents.

There is no ambiguity in the term "if possible" within the context of subsection (2); and, therefore, there is no basis to construe the term beyond its literal, plain meaning.[16] The trial court's interpretation is consistent with the clearly expressed legislative intent, viz., the consulting physician must notify the parents, if under the circumstances, in the exercise of reasonable diligence, he can ascertain their identity and location and it is feasible or practicable to give them notification.[17] Furthermore, within the context of what is reasonable under the circumstances, the time element is an important factor, for there must be sufficient expedition to provide an effective opportunity for an abortion.[18]

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.

---

16. ". . . there is nothing to construe where there is no ambiguity in the statute." *State v. Archuletta,* Utah, 526 P.2d 911, 912 (1974).

17. See 20 Words and Phrases, 1979 Supplement, p. 8, "If Possible."

18. *Bellotti v. Baird,* at p. —— of —— U.S., at p. 3049 of 99 S.Ct., at p. 814 of 61 L.Ed.2d.