**In re the Matter of T.P., A Minor, Appellant (Petitioner Below).**

No. 385S96.

Supreme Court of Indiana.

March 22, 1985.

Solomon L. Lowenstein, Jr., Fort Wayne, for appellant (petitioner below).

PIVARNIK, Justice.

This is a direct appeal from the Allen Superior Court, Family Relations Division, pursuant to Ind.R.App.P. 16. Rule 16 provides for the direct appeal of a Juvenile Court ruling in an action for waiver of parental consent to abortion under Ind. Code § 35–1–58.5–2.5 (Burns Supp.1984). T.P., through Attorney Solomon L. Lowenstein, Jr., filed her "Petition For Waiver Of Parental Consent" on March 1, 1985, which stated that she was between eight and nine weeks pregnant and desired to have an abortion without parental consent. No physician's statement was filed with T.P.'s petition.

Appellant T.P. filed her "Statement of Facts" pursuant to Rule 16 with the Clerk of this Court on March 15, 1985.* In said Statement, T.P. indicates the special points she desires to bring to the attention of this Court and the fact that the trial court had denied her petition. T.P. specifically alleges "that the findings of the Court go beyond the requirements of I.C. 35–1–58.5–2.5 and in effect denies the petition based upon conduct rather than maturity and best interests of a sixteen year old, unemployed high school sophomore student." We interpret T.P.'s complaint to be that the trial court utilized standards outside the scope of the requisite statutory inquiry.

We note that no challenge has been made to the constitutionality of this statute.

The only testimony heard by the trial court during its hearing on March 4, 1985, was that of T.P. herself. She testified that she previously had become pregnant during the summer of 1984 and had terminated that pregnancy by an abortion, with her parents' consent, in September, 1984. She indicated that her first pregnancy had had a traumatic effect on her parents to the extent that she feared that if she revealed her second pregnancy to them, it could cause a divorce and a disruption of the entire family including her fourteen-year-old brother. T.P. also testified that she was living at home with both parents in Noble County, Indiana, was a sophomore in high school, was still dating the same boy who fathered both of her pregnancies and that her relationship with her parents was "fairly well for a parent/child relationship." She did not want her parents to know of this present pregnancy because it would have an adverse effect upon their marriage and upon their relationship with her. On questioning by the trial court, T.P. indicated that it had been explained to her what caused pregnancies and what means could be taken to prevent them. A doctor who attended her on her first abortion had explained birth control to her and she said she understood it and how to use it but thought her parents would not approve of it. Her boyfriend used protection sometimes but not always. She said she had had explained to her the side effects of abortion, one of them being that she could become sterile. The judge asked her if she had considered the probability that she would become pregnant again if she continued her relationship with her boyfriend without using birth control, and if she had considered the effect another pregnancy would have on her parents, her family, and herself. Certain questioning by the trial court was as follows:

"Q How would the knowledge of this pregnancy affect your parents and their marital status?

---

* Record actually received by mail on March 18, 1985.

A  Well, they'd—like I said, they would probably get a divorce.

Q  I heard you say that. I'm asking why?

A  Because they'd—they're—I mean, they're—I don't know, they've got—they've got pressures on them from their work and they—you know, they understand me because I am, you know, growing up and mom remembers how she was growing up and everything, and that we just—that it would just—mom is afraid, you know, of me really turning the other way almost, like, you know, like things like going—you know, seeing all—you know, seeing my future just go down the drain and that isn't what she wants me to—you know, that isn't what she wants. And she's afraid if that happened like everything that she's worked for and everything, you know, it didn't work at all. And she just—I don't know what she would do."

The trial court subsequently concluded: "I do not find that this young lady is mature enough to make this decision nor do I find that the abortion is in the best interest of the child. I will therefore deny the petition."

Ind.Code § 35–1–58.5–2.5(a) provides that a physician shall not perform an abortion upon an unemancipated pregnant woman under the age of 18 years without first obtaining the written consent of one of the parents or the legal guardian of the minor pregnant woman. Ind.Code § 35–1–58.5–2.5 further provides, in sub-section b, that a minor who objects to having to obtain parental consent may petition the juvenile court for a waiver. Sub-section c provides that a physician who feels that compliance with the parental consent requirement in sub-section a would have an adverse effect on the welfare of the pregnant minor or on her pregnancy also may petition the juvenile court for a waiver. Subsection d provides that the juvenile court must rule on petitions pursuant to sub-sections b and c within forty-eight hours of their filing and "shall" consider the concerns expressed by the pregnant minor and her physician. The concerns of the physician, of course, would be considered only under sub-section c. Sub-section d further provides that the statutory requirement of parental consent shall be waived by the juvenile court if the court finds "that the minor is mature enough to make the abortion decision independently or that an abortion would be in the minor's best interests." Rule 16 provides for a direct appeal to this Court and dictates only that the record and judgment of the trial court be certified to this Court and that any party may file a short statement of special points desired to be brought to the attention of this Court. This has all been done.

This is the first appeal brought to this Court under the statutory scheme of Ind.Code § 35–1–58.5–2.5. We interpret the standards to be applied in this appeal to be the same as those utilized in reviewing all other appeals. In other words, we will not substitute our judgment for that of the trial judge when reviewing evidence and we will not interpret facts or the credibility of witnesses in substitution of his judgment. *See generally Martin v. Roberts*, (1984) Ind., 464 N.E.2d 896 [standard for review of evidence in civil transfer cases]; *Ballard v. State*, (1984) Ind., 464 N.E.2d 328 [standard for review of evidence in criminal appeal cases]; *Indiana Alcoholic Beverage Commission v. Lamb*, (1971) 256 Ind. 65, 267 N.E.2d 161 [standard for judicial review of administrative decisions]. Our review is strictly limited to determining that the trial judge followed the law in applying the procedure outlined by the statute and properly exercised his discretion in making a judgment.

The only complaint Appellant T.P. seems to make is that the trial judge inferred by his questions that he was using improper standards to determine the maturity of this minor. Specifically, T.P. claims the trial judge based his decision on her "conduct rather than maturity and best interests." We do not so interpret the trial judge's questions. In order to decide upon the maturity of this minor and to determine

whether she would have an ability to independently make the monumental decisions facing her, it was necessary for the trial judge to question her about what understanding she had of the alternatives facing her and about the judgment she used in weighing those alternatives. Conduct can provide part of the context in which maturity is to be judged. It is apparent from T.P.'s testimony that she had become pregnant some months before this episode, had obtained parental consent and had an abortion. Moreover, she is living with her parents, attending high school, and has a good relationship with her parents. The only testimony indicating potential adverse effects on T.P. and her family was T.P.'s appraisal that a second episode of pregnancy would be upsetting to her parents. This is the only reason she gave for wanting to terminate her pregnancy without the knowledge of her parents. Considering all the facts and circumstances presented at the trial court's hearing, we do not believe that the trial judge was unjustified in finding that T.P. did not demonstrate sufficient maturity to be able to make an independent judgment about the best means by which to solve her pregnancy problem and to further find that T.P.'s best interest would not be served by granting the waiver. The trial judge did not abuse his discretion in making this determination based on the facts presented to him and the attitudes and judgments made by this minor.

We affirm the judgment of the trial court.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.