H____ B____, on behalf of herself and all other persons similarly situated, Plaintiff,

v.

David R. WILKINSON, individually and in his capacity as Attorney General of the State of Utah, and Honorable Norman H. Bangerter, individually and his capacity as Governor of the State of Utah, Defendants.

Civ. No. C86–400G.

United States District Court,
D. Utah, C.D.

June 5, 1986.

David S. Dolowitz, Salt Lake City, Utah, for plaintiff.

Paul Tinker, Clark Graves, Atty. Gen's Office, State of Utah, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This action was tried on May 21 and 22, 1986, at the conclusion of which the court denied plaintiff's motion for injunctive relief and dismissed the action. Detailed Findings of Fact and Conclusions of Law are filed contemporaneously herewith, and the court now renders its Memorandum Decision and Order.

### I. CONSTITUTIONALITY OF UTAH'S PARENTAL NOTICE STATUTE AS APPLIED TO IMMATURE MINORS

This lawsuit challenges Utah Code Ann. § 76–7–304(2) (1953), which provides in pertinent part:

To enable the physician to exercise his best medical judgment, he shall:

\*    \*    \*    \*    \*    \*

(2) [N]otify, if possible, the parents or guardian of the woman upon whom the abortion is to be performed, if she is a minor. . . .

The statute was construed by the Utah Supreme Court to mandate notice where feasible to parents of all minors seeking abortions. *H.L. v. Matheson,* 604 P.2d 907 (Utah 1979), *aff'd* 450 U.S. 398, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981). On appeal, the U.S. Supreme Court carefully fashioned the issue before it to clarify that it made no ruling with respect to whether notice must be given where the individual seeking an abortion is "mature." The Court said:

The only issue before us, then, is the facial constitutionality of a statute requiring a physician to give notice to parents, "if possible," prior to performing an abortion on their minor daughter, (a) when the girl is living with and dependent upon her parents, (b) when she is not emancipated by marriage or otherwise, and (c) she has made no claim or showing as to her maturity or as to her relations with her parents.

*H.L. v. Matheson,* 450 U.S. 398, 407, 101 S.Ct. 1164, 1170, 67 L.Ed.2d 388 (1981).

It is apparent that a majority of the Court has determined that the state has a legitimate interest in requiring notice to a minor's parents and that the privacy interest of the minor does not supersede that interest, at least as applied to minors who are not "mature." In this regard, Chief Justice Burger, speaking for the majority, stated:

[A] statute setting out a "mere requirement of parental notice" does not violate the constitutional rights of an immature, dependent minor.

\*    \*    \*    \*    \*    \*

"As immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor. It may further determine, as a general proposition, that such consultation is particularly desirable with respect to the abortion decision—one that for some people raises profound moral and religious concerns. . . ."

450 U.S. at 409, 101 S.Ct. at 1171 (*quoting* statement of four Justices in *Bellotti v. Baird,* 443 U.S. 622, 640–41, 99 S.Ct. 3035, 3046–47, 61 L.Ed.2d 797 (1979) (hereinafter "Bellotti II")). Because of the importance of the minor's privacy interest, in the context of consent statutes, the Supreme Court has required that an alternative to parental consent must be presented in such statutes where the minor is "mature." *See Bellotti II,* 443 U.S. 623, 99 S.Ct. 3037. Plaintiff here argues that under *H.L. v. Matheson, Bellotti II* and other case law, if the Utah notice statute were applied to minors who were deemed "mature," it would be constitutionally defective. This court is not convinced that such would be true of Utah's statute which requires mere notice. We do not reach that issue here, however, because this court has found that the plaintiff in this case is an immature minor who does not live in a hostile home environment. Accordingly, this matter is governed by *H.L. v. Matheson* which upheld the constitutionality of Utah's notification statute in such cases.

## II. STANDARD FOR DETERMINING "MATURITY"

The Supreme Court has not explicitly defined "maturity" in the context of a state law requiring parental consent or notice of a decision to perform an abortion on a minor. However, Mr. Justice Powell, writing the plurality opinion in *Bellotti II,* reviewed prior case law limiting minors in making important decisions:

[T]he Court has held that the States validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences. These rulings have been grounded in the recognition that, during the formative years of childhood and adolescence, minors often

lack the experience, perspective and judgment to recognize and avoid choices that could be detrimental to them. *Bellotti II*, 443 U.S. at 635, 99 S.Ct. at 3044. Later in the same case, Justice Powell and three other Justices joined in the statement which was quoted with approval in *H.L. v. Matheson* wherein it was noted that "immature minors often lack the ability to make fully informed choices that take account of both immediate and long range consequences," particularly with respect to the abortion decision. *Id.* at 640, 99 S.Ct. at 3046.

■■■ Manifestly, as related to a minor's abortion decision, maturity is not solely a matter of social skills, level of intelligence or verbal skills. More importantly, it calls for experience, perspective and judgment. As to experience, the minor's prior work experience, experience in living away from home, and handling personal finances are some of the pertinent inquiries. Perspective calls for appreciation and understanding of the relative gravity and possible detrimental impact of each available option, as well as realistic perception and assessment of possible short term and long term consequences of each of those options, particularly the abortion option. Judgment is of very great importance in determining maturity. The exercise of good judgment requires being fully informed so as to be able to weigh alternatives independently and realistically. Among other things, the minor's conduct is a measure of good judgment.[1] Factors

such as stress and ignorance of alternatives have been recognized as impediments to the exercise of proper judgment by minors, who because of those factors "may not be able intelligently to decide whether to have have an abortion." *American College of Obstetricians & Gynecologists v. Thornburgh*, 737 F.2d 283, 296 (3rd Cir. 1984), *jurisdiction postponed*, —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985).[2] Experience, perspective and judgment are often lacking in unemancipated minors who are wholly dependent and have never lived away from home or had any significant employment experience. In this regard, the Utah Legislature has determined that parental notification should be provided to parents of all minors seeking abortions. This court considers that the statute creates a presumption of immaturity as to all minors, although it may be that the statute would be construed in a proper case to exempt demonstrably mature minors and/or minors with hostile home environments.[3] This court has already construed the statute as inapplicable to emancipated minors.[4]

■■■ No attempt is here made to catalog cases and precedents. No doubt authority could be researched from several disciplines bearing upon the imponderable matter of defining and determining maturity in minors. The only attempt here is to explain the standard utilized by this court in making the determination in this case. The standard for determining maturity in the

**1.** *See In Re T.P.*, 475 N.E.2d 312 (Ind.1985).

**2.** The *Thornburgh* case which pends before the United States Supreme Court involves a parental consent statute, so the validity of parental notification statutes such as Utah's may not be addressed when the decision comes down. The court in *Thornburgh* characterized both consent and notice provisions as "important protections for minors" whose judgment is impaired by stress or ignorance of alternatives. In *Planned Parenthood v. Danforth*, 428 U.S. 52, 67, 96 S.Ct. 2831, 2840, 49 L.Ed.2d 788 (1976), the court said:

> The decision to abort, indeed, is an important, and often a stressful one, and it is desirable and imperative that it be made with full knowledge of its nature and consequences.

A plurality of the court in *Bellotti II*, 443 U.S. at 640–41, 99 S.Ct. at 3046–47, said that the abortion decision,

> [I]s a grave decision, and a girl of tender years, under emotional ⸗ress, may be ill-equipped to make it without mature advice and emotional support. It seems unlikely that she will obtain adequate counsel and support from the attending physician at an abortion clinic, where abortions for pregnant minors frequently take place.

**3.** *See H.L. v. Matheson*, 450 U.S. at 407, 101 S.Ct. at 1170.

**4.** *L.R. v. Hansen*, Civil No. C80–0078J (Feb. 8, 1980).

abortion decision context here adopted calls for sufficient experience and perspective to make a realistic, independent and informed judgment regarding one's best interests, including demonstrated understanding of immediate and long term consequences thereof. The minor in the case at bar did not reach this level of maturity or mature decision making in the court's opinion. Accordingly, this case is governed by *H.L. v. Matheson* and must be dismissed.

IT IS SO ORDERED.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above entitled matter came before the court on the 21st day of May 1986, on plaintiff's Motion and Application for Temporary Restraining Order and/or Preliminary Injunction. David S. Dolowitz appeared on behalf of plaintiff and Deputy Attorneys General Paul Tinker and Keith Graves appeared on behalf of defendants. On motion of plaintiff, unopposed by defendants, and after hearing arguments in opposition by counsel for the Society of Professional Journalists, the Court closed the hearing to the public in order to receive allegedly sensitive testimony and evidence. The court ordered that the action go forward without appointment of a guardian ad litem, which would have required notice to plaintiff's parents. After the hearing commenced, pursuant to Fed.R.Civ.P. 65(a)(2) (1985) the court ordered that trial of the action on the merits be advanced and consolidated with the hearing of the motion and application. At the conclusion of the injunctive phase of testimony no further evidence was offered on behalf of plaintiff and counsel for plaintiff rested its case. Defendant determined to question plaintiff further, which occurred on May 22, 1986, in chambers in a more natural and less formal environment. At the outset of the proceedings in chambers, the Court questioned the plaintiff at length, carefully noting her demeanor. The case previously had been fully argued, and at the conclusion of plaintiff's testimony both sides rested and submitted the matter for ruling. The court rendered an oral decision denying plaintiff's application for injunctive relief, finding plaintiff to be without standing to challenge the constitutionality of Utah Code Annot. § 76–7–304(2) (1953), denying plaintiff's motion to certify the case as a class action and dismissing the case. The court now makes and enters its Findings of Fact and Conclusions of Law, and renders its Memorandum Decision and Order.

### FINDINGS OF FACT

1. Plaintiff is unmarried and has never been married.

2. Plaintiff is a 17 year old, *unemancipated* minor.

3. Plaintiff resides at home with her parents and a younger family member.

4. Plaintiff is not employed and is entirely dependent upon her parents for financial support.

5. Plaintiff is enrolled in high school where she maintains a very good scholastic average.

6. Plaintiff desires to acquire a college education, and expects to be financially supported by her parents in obtaining such higher education.

7. Plaintiff has never lived away from home.

8. Plaintiff has never been regularly employed or had an independent income.

9. Plaintiff is allowed the use of the family car, resides in the family home in a room designated for her, has a telephone in that room, and is given an allowance for spending money.

10. Plaintiff admits that her parents are loving, caring and very concerned parents who have shown great love and interest in her well-being, education and development. She does not live in a hostile home environment. To the contrary, her home situation is supportive, loving and aimed at promoting her best interest and plaintiff recognizes that.

11. Plaintiff frequently accompanies her parents and other family members on

vacations, boating and camping trips, and family reunions.

12. Several months ago plaintiff became sexually active with her 17 year old boyfriend; however, plaintiff neither obtained nor used contraception, even though she did not want to become pregnant.

13. Plaintiff continued sexual activity without contraceptives with her 17 year old boyfriend on several occasions, estimated by her at about ten (10) instances. She did so without contraceptives because she believed that if she should become pregnant she could easily obtain an abortion without her parents learning about it. She has never used contraceptives.

14. About three and one-half months ago plaintiff became pregnant. On May 21, 1986, she was estimated to be in the 12th week, near the end of the first trimester of pregnancy.

15. In early May 1986, plaintiff determined to seek an abortion in view of the circumstances. Plaintiff had considered and rejected the alternatives of adoption and single parenthood. Her decision in substantial part was based upon a desire to conceal her sexual activity and pregnant condition from her parents.

16. Plaintiff does not want her parents to know of her pregnancy or of her decision to have an abortion, and she has not consulted with her mother or father or any family members or relatives concerning the matter of her pregnancy or decision to have an abortion.

17. Plaintiff believes that she could obtain an abortion without the knowledge of her parents and that if complications should arise she could hide the true facts about her condition from her parents. For example, if complications incident to the abortion should arise at night, plaintiff believes that she could surreptitiously and without being noticed, leave the premises to obtain medical assistance.

18. Plaintiff believes herself to be in danger of receiving physical and emotional disciplinary action from her father, in the event her father becomes aware of her pregnant condition or of an abortion. Plaintiff's fear of her father and of disciplinary action by him is based primarily upon two past incidents of being physically struck by her father, once in early childhood and the other within the past two years. The court observed none of the "body language" which had been described and interpreted by Dr. Bagley and Dr. Mattis as indicative of plaintiff's alleged extreme fear of her father. Plaintiff said that she knew her father had her best interests at heart, but that he is rigid and very strict as to such matters as sexual activity and she believes that he would forcefully oppose her abortion decision.

19. Plaintiff does not fear her mother, but believes that her mother would tell her father if she were to confide in her. Plaintiff further believes that her mother would experience emotional and physical illness if she were to learn of plaintiff's pregnant condition or of her desire for an abortion.

20. In early May 1986, plaintiff contacted the Wasatch Women's Center, an organization which provides, among other things, abortion and counseling services. Plaintiff learned of this Center from a 16 year old girlfriend, who obtained information about the Center from her mother, which subsequently led to plaintiff's appointment at the Center. (Plaintiff did not actually make the appointment.)

21. Plaintiff met with Dr. Sandra Bagley, a social worker who is the owner and a director of the Wasatch Women's Center, on three occasions. Plaintiff was informed of the abortion procedure and a consent form was explained to her which she signed. The portion of the consent form was crossed out which calls for certification that the signator had listened to a "consent tape," and that "questions concerning the abortion have been answered to my satisfaction." Plaintiff did not recall anything being crossed out or any discussion about a "consent tape." However, both plaintiff and Dr. Bagley testified that plaintiff's options and alternatives, and whatever questions she had, were discussed fully. Dr. Bagley determined that

an abortion would be in the best interest of plaintiff and that the plaintiff is mature. Dr. Bagley testified that the Center is only authorized to perform abortions during the first trimester, and said that the Center would not perform the abortion unless it were done within a day of the hearing.

22. Dr. Bagley introduced plaintiff to Dr. Burki, a physician at the Wasatch Women's Center, who performed a routine physical examination and administered an ultrasound test for purposes of determining the age of plaintiff's fetus. Dr. Burki determined that plaintiff was sufficiently mature to make the decision to have an abortion without the consent of or notice to her parents, and determined that it would be in her best interest to have such a therapeutic abortion. Dr. Burki stated in a letter dated May 15, 1986, to David Dolowitz, attorney for the American Civil Liberties Union, that she would be willing to perform an abortion on plaintiff without parental notification because of her strong belief that this would be in the best interest of plaintiff.

23. Plaintiff was introduced to attorney David Dolowitz who interviewed her. After expressing concern about plaintiff's lack of eye contact, Mr. Dolowitz and Dr. Bagley arranged for her to be examined by Dr. Mattis, an independent clinical psychologist, who spent approximately two hours consulting with plaintiff, including administering a portion of an IQ test. Plaintiff scored high in social maturity, and Dr. Mattis determined that plaintiff was a bright and mature person, although she admitted that brightness does not equate to maturity.

24. Dr. Bagley recommended to plaintiff that she discuss the matter of a possible abortion with an adult outside the Wasatch Women's Center, and plaintiff agreed to do that.

25. Rather than seeking counsel from family members or relatives, church officials, school counselors, adult neighbors or family friends, plaintiff consulted with a 16 year old girlfriend, a 17 year old friend, her 17 year old boyfriend and her boyfriend's brother who is in his early twenties, in addition to the persons she met at and through the Wasatch Women's Center. Plaintiff relied upon advice from her boyfriend's older brother, who told her that it was her decision but that she would have to give up going to college if she decided to have and keep the baby. Plaintiff had known this person for only about three and one-half months. Plaintiff failed to take account of his possible motives in favor of abortion from the standpoint of his younger brother as the father, or whether his motives were in plaintiff's best interest.

26. Neither plaintiff nor her boyfriend, who also testified at the trial, consider marriage at this time to be desirable, and they have no intention of marrying now or in the foreseeable future. The boyfriend is also unemancipated, living with and dependent upon his parents.

27. Plaintiff signed the verified complaint herein on May 12, 1986, three days before plaintiff was examined by Dr. Mattis, the clinical psychologist. The verified complaint alleges in several places that the "abortion is medically necessary" (paragraphs 11, 12, 13, 17), however, plaintiff was unaware of that allegation or the basis for it. Dr. Bagley admitted in her testimony that plaintiff was normal in a physical sense and that it would be no more medically dangerous for her to give birth to a baby than it would be for other physically normal females.

28. Plaintiff's initial demeanor as a witness was characterized by a high degree of nervousness and apparent stress, and at times her testimony was hesitant and uncertain. Plaintiff's demeanor in chambers was such that she was more at ease, more expressive and less cryptic and monosyllabic, than she had been in the courtroom. She was also less hesitant and showed more emotion, shedding tears at times. In general, plaintiff expressed herself well, but her judgment was perceived by the court as immature, and her expectations and perspective unrealistic.

29. Plaintiff demonstrated unrealistic judgment and perspective in such things as

her reliance upon advice of teenagers, her expectation of keeping the secret from her parents and particularly her mother if medical complications arise, her dismissal without due consideration of the possibility of experiencing post-abortion depression, her purposeful failure to use contraceptives and her cavalier attitude about the ease of abortion.

30. Based upon all of the facts and circumstances, including the testimony and demeanor of plaintiff, the court finds her to be immature, lacking the experience, perspective and judgment to recognize and avoid choices which could be detrimental to herself.

31. Parental notice in a discreet way at least to the mother would be in the best interest of plaintiff whatever the ultimate decision as to alternatives might be. This is particularly true in light of the fact that plaintiff expressed hypothetically that she might reconsider her decision to have an abortion if her parents were more understanding and supportive.

## CONCLUSIONS OF LAW

1. Plaintiff is a minor within the meaning of Utah Code Ann. § 76–7–304(2) (1953) and subject to the requirement of notification to her parents in the event of an abortion decision as called for in that law. Plaintiff is not a mature minor.

2. The provisions of Utah Code Ann. § 76–7–304(2) (1953) as applied to plaintiff, are not unconstitutional and do not violate the Fourteenth Amendment to the Constitution of the United States as an invasion or unwarranted regulation of the right of privacy of plaintiff.

3. Plaintiff lacks standing to challenge the constitutionality of the provisions of Utah Code Ann. § 76–7–304(2) (1953) as an overbroad regulation infringing upon plaintiff's exercise of the right of privacy, as an invalid regulation of plaintiff's right of privacy without providing exceptions or alternative procedures, or as an interference with or unwarranted regulation of the doctor-patient relationship with no alternate procedure.

4. The provisions of Utah Code Ann. § 76–7–304(2) (1953) do not violate 42 U.S.C. § 1983 (1981) and in all events plaintiff has no standing to claim such violation or to claim costs or attorney's fees pursuant to 42 U.S.C. § 1988 (1981).

5. Plaintiff is neither a proper, nor an adequate representative of the class sought to be certified, and this lawsuit is not and should not be certified as a class action.

6. Plaintiff is not entitled to the issuance of a temporary restraining order or a preliminary injunction in the case.

7. Defendants are awarded costs of court.