74 P.3d 285

**In the Matter of B.S., a minor.**

**No. 1 CA–JV 03–0028–AB.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 19, 2003.

---

\* The Honorable A. Fred Newton, Judge *Pro Tempore* of the Court of Appeals, Division One, has been authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 31, and A.R.S. §§ 12–145 through –147 (2003).

Carol Coghlan Carter, Gold Canyon, Attorney for B.S.

## OPINION

TIMMER, Judge.

¶ 1 This appeal presents our first opportunity to consider the application of Arizona Revised Statutes ("A.R.S.") section 36–2152(B)–(F) (2003), Arizona's "judicial bypass" provision, which prohibits a person from performing an abortion on an unemancipated minor without first securing written consent from her parent, guardian, or conservator, unless the superior court authorizes the attending physician to perform the procedure.

## BACKGROUND

¶ 2 On Friday, March 7, 2003, sixteen-year-old B.S., who believed she was eight and one-half weeks pregnant, filed a petition in the juvenile court pursuant to A.R.S. § 36–2152(B) seeking authorization for an abortion without permission from her parent or guardian. Pursuant to § 36–2152(B) and (E), the juvenile court held a hearing on Monday, March 10, to consider B.S.'s petition. At the conclusion of the hearing, the court announced its decision to deny the petition, which was memorialized in a written order filed the next day.

¶ 3 On March 11, B.S. filed a motion for reconsideration of the court's order. At the commencement of a hearing on the motion that same day, however, B.S. withdrew her motion, stating her intention to immediately appeal the juvenile court's order. Later that day, B.S. filed a petition for appellate review.

¶ 4 We heard oral argument on the petition on the morning of March 12, and then issued an order that afternoon affirming the juvenile court's ruling. In our order, we stated that a detailed written disposition fully explaining our decision would follow. This opinion provides that explanation.[1]

## STANDARD OF REVIEW

¶ 5 We review the court's interpretation of § 36–2152(B) de novo as a question of law. *Energy Squared, Inc. v. Arizona Dep't of Revenue*, 203 Ariz. 507, 509, ¶ 15, 56 P.3d 686, 688 (App.2002). However, giving due regard to the court's opportunity to assess witnesses' credibility and demeanor, we will set aside factual findings only if they are clearly erroneous. *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5, 12 P.3d 1203, 1205 (App.2000). A finding is clearly erroneous if no reasonable evidence supports it. *Audra T. v. Arizona Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App.1998) (citation omitted).

## DISCUSSION

¶ 6 B.S. argues the juvenile court erred by improperly applying A.R.S. § 36–2152(B). Before addressing B.S.'s specific contentions of error, we generally examine the judicial bypass procedure to establish a context for our decision.

## I.

¶ 7 Like her adult counterpart, a female minor possesses a constitutionally protected right to choose whether to terminate her pregnancy. *Planned Parenthood v. Danforth*, 428 U.S. 52, 72–75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The Supreme Court had held, however, that a state may require parental consent to a minor's abortion decision as long as the state provides an alternative, judicial bypass procedure. *Bellotti v. Baird*, 443 U.S. 622, 643, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (commonly known as *"Bellotti II "*). The minor is entitled in such an alternative proceeding to show either (1) that she is sufficiently mature and well-informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes, or (2) that if she cannot make the decision independently, an abortion would serve her best interests. *Id.* at 643–44, 99 S.Ct. 3035.

¶ 8 Following *Bellotti II*, Arizona enacted successive versions of a parental consent statute with an attendant judicial bypass procedure. A.R.S. § 36–2152, Historical and Statutory Notes.[2] The provisions are currently codified in A.R.S. § 36–2152. Pursuant to § 36–2152(B), after "an appropriate hearing" the court must authorize a physician to perform the abortion if the court determines the pregnant minor is both "mature and capable of giving informed consent to the proposed abortion." A.R.S. § 36–2152(B). If the court finds that the minor lacks maturity, or if the minor does not claim to be mature, the court must then determine whether the performance of an abortion without consent by a parent, guardian, or conservator would be in the minor's best interests. *Id.* If so, the court must authorize the abortion. *Id.*[3]

---

1. After we affirmed the juvenile court's order, B.S. filed a new petition with that court seeking authorization for an abortion. After the hearing held on that petition, the court granted it. Although B.S. has received the relief she sought in her original petition, we issue this opinion to provide guidance for the juvenile court and others in future proceedings under A.R.S. § 36–2152. *See First Phoenix Realty Inv. v. Superior Ct.*, 173 Ariz. 265, 266, 841 P.2d 1390, 1391 (App.1992).

2. For a history of Arizona's attempts to enact constitutionally permissible provisions, *see Planned Parenthood v. Lawall*, 307 F.3d 783, 785–86 (9th Cir.2002).

3. Section 36–2152(B) provides in full as follows:

   B. A judge of the superior court shall, on petition or motion, and after an appropriate hearing, authorize a physician to perform the abortion if the judge determines that the pregnant minor is mature and capable of giving

¶ 9 The legislature did not specify who bears the burden of proving the circumstances set forth in § 36–2152(B). The United States Supreme Court has held that states are not required to prove the issues of maturity and best interests in proceedings to judicially bypass parental consent requirements. *Ohio v. Akron Ctr. for Reprod. Health,* 497 U.S. 502, 515, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (commonly referred to as *"Akron II"*). Thus, we follow our general rule that the party asserting the affirmative of an issue bears the burden of proving it. *John E. Shaffer Enter. v. City of Yuma,* 183 Ariz. 428, 431, 904 P.2d 1252, 1255 (App.1995) (citation omitted). Because that person in a judicial bypass proceeding is the pregnant minor, she bears the burden of proof. *See In re Petition of Anonymous 1,* 251 Neb. 424, 558 N.W.2d 784, 787 (1997) (holding pregnant minor has burden to prove entitlement to judicial bypass in absence of legislative pronouncement to contrary); *see also In re Anonymous,* 833 So.2d 75, 78 (Ala.Civ.App. 2002) (acknowledging minor bears burden of proof in judicial bypass proceeding); *In re Doe 4,* 19 S.W.3d 337, 339 (Tex.2000) (same).

¶ 10 The legislature also did not specify the standard of evidentiary proof required under § 36–2152(B). Although "preponderance of the evidence" is the standard typically employed in civil cases, *Rasmussen v. Fleming,* 154 Ariz. 207, 224, 741 P.2d 674, 691 (1987), for three reasons we conclude that "clear and convincing evidence" is the appropriate standard to use in judicial bypass cases.

¶ 11 First, the non-adversarial nature of the proceeding justifies use of the clear-and-convincing-evidence standard. Specifically, because the minor controls the presentation of evidence, the court will likely not receive evidence disputing either the minor's ability to make a mature, well-informed abortion decision, or that an abortion is in the minor's

best interests. Thus, in order to avoid making judicial bypass a mere pass-through proceeding, and to maximize the court's ability to make a reasoned decision within a compressed time frame, the minor must prove her entitlement to judicial bypass by clear and convincing evidence. *See Akron II,* 497 U.S. at 516, 110 S.Ct. 2972 (holding state may require clear and convincing evidence "when, as here, the bypass procedure contemplates an *ex parte* proceeding at which no one opposes the minor's testimony.").

¶ 12 Second, the heightened evidentiary standard is justified by the magnitude of the presented issue. Our supreme court has recognized the need to apply a higher evidentiary standard in exceptional civil matters that involve "personal interests more important than those found in the typical civil dispute where private litigants squabble over a sum of money." *Rasmussen,* 154 Ariz. at 223, 741 P.2d at 691. Thus, in *Rasmussen,* the court applied the clear-and-convincing-evidence standard to determine whether medical treatment for an incompetent person should be continued or terminated. *Id.; see also Ruvalcaba v. Ruvalcaba,* 174 Ariz. 436, 445, 850 P.2d 674, 683 (App.1993) (following *Rasmussen,* higher evidentiary standard applied to decide guardian's petition to dissolve incompetent spouse's marriage).

¶ 13 Like the termination of medical treatment, a judicial bypass proceeding involves intensely personal interests. Moreover, any decision authorizing an abortion will have irreversible consequences unless the minor chooses not to proceed. For these reasons, a judicial bypass procedure falls within the exceptional category of matters that justifies use of the clear-and-convincing-evidence standard. *See In re Petition of Anonymous 1,* 558 N.W.2d at 787 (holding importance of issue and *ex parte* nature of judicial bypass proceeding justifies use of clear-and-convincing-evidence standard).

informed consent to the proposed abortion. If the judge determines that the pregnant minor is not mature or if the pregnant minor does not claim to be mature, the judge shall determine whether the performance of an abortion on her without the consent from one of her parents or her guardian or conservator would be in her best interests and shall authorize a physician

to perform the abortion without consent if the judge concludes that the pregnant minor's best interests would be served.

Our supreme court has issued instructions and forms implementing judicial bypass procedures under § 36–2152. *See* http://www.supreme.state.az.us/selfserv/abortion_forms.htm.

¶ 14 Third, and finally, the heightened standard is warranted because the judicial bypass procedure impacts a parent's opportunity to participate in making a significant decision involving his or her minor daughter. The Court has recognized that parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Bellotti II*, 443 U.S. at 637–38, 99 S.Ct. 3035 ("[I]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.") (Quoting *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)). In a proceeding that encroaches on a parent's ability to exercise this interest, a heightened standard of proof is warranted. *See Akron II*, 497 U.S. at 517–18, 110 S.Ct. 2972 (noting clear-and-convincing-evidence standard "ensures that the judge will take special care in deciding whether the minor's consent to an abortion should proceed without parental notification.").

¶ 15 With these general principles in mind, we now consider whether the juvenile court erred by ruling that B.S. failed to satisfy her burden under § 36–2152(B).

## II.

¶ 16 B.S. claimed in her petition to the juvenile court that she was mature and capable of giving informed consent for an abortion. After a hearing, the court found that B.S. had not presented competent evidence to allow the court to conclude she was either sufficiently mature to give consent or that an abortion without consent from either parent would be in her best interests.[4] The court did not make any findings about B.S.'s capability of giving informed consent for an abortion.

4. The court neither identified what evidence it found to be incompetent nor explained its reasons for this finding. We are able to glean some of the court's reasoning from reviewing a recording of the hearing on the petition. We point out, however, that A.R.S. § 36–2152(D) requires the court to "make in writing specific factual findings and legal conclusions supporting" the

¶ 17 B.S. does not challenge the "best interests" ruling. Rather, she contests the court's finding that she had not proven by competent evidence that she was sufficiently mature to give informed consent. B.S. additionally argues the court incorrectly conditioned authorization for an abortion on whether B.S. had first attempted to obtain her mother's consent for the procedure. We address each contention in turn.

## A.

¶ 18 The Supreme Court in *Bellotti II* did not explicitly define the attributes of "maturity" that a minor must possess in order to bypass parental consent for an abortion. 443 U.S. at 643–44 n. 23, 99 S.Ct. 3035 (recognizing maturity is "difficult to define, let alone determine"). The Court provided some guidance in making that determination, however, by observing that "minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." *Id.* at 635, 99 S.Ct. 3035. In light of this observation, we agree with other courts that maturity may be measured by examining the minor's experience, perspective, and judgment. *H—B—v. Wilkinson*, 639 F.Supp. 952, 953–54 (D.Utah 1986); *In re Petition of Anonymous 1*, 558 N.W.2d at 787–88.

¶ 19 "Experience" refers to all that has happened to the minor during her lifetime, including things she has seen or done. *Webster's II New College Dictionary* 395 (2001). To assess the minor's experience level, the court could consider such things as the minor's age and experiences working outside the home, living away from home, traveling on her own, handling personal finances, and making other significant decisions. *See H—B—*, 639 F.Supp. at 954.

¶ 20 "Perspective," in the context of an abortion decision, refers to the minor's

court's decision. Such findings are especially crucial to enable us to hold a hearing and decide an appeal within forty-eight hours after a petition for appellate review is filed. A.R.S. § 36–2152(F). We therefore urge the juvenile court in future cases to fully explain its decision in written findings.

ability to appreciate and understand the relative gravity and possible detrimental impact of available options, as well as the potential consequences of each. *Id.* Thus, when evaluating the minor's perspective on her decision, the court could examine the steps she took to explore her options, and the extent to which she considered and weighed the potential consequences of each option.

¶ 21 Finally, "judgment" refers to the minor's intellectual and emotional ability to make the abortion decision without the consent of her parents or guardian. *Id.* To assess judgment, the court could consider the minor's conduct since learning of her pregnancy and her intellectual ability to understand her options and make an informed decision. *Id.* (recognizing that factors such as stress and ignorance of alternatives are impediments to exercising proper judgment); *In re Doe 4,* 19 S.W.3d at 339 (noting one factor to examine in determining maturity is whether minor's decision resulted from impulse rather than careful consideration).

¶ 22 Bearing these guidelines in mind, we examine the juvenile court's finding that B.S. did not provide competent evidence of her maturity. At the hearing before the court, attended by B.S., her boyfriend, and her attorney, B.S. presented two completed forms prepared by Planned Parenthood of Central and Northern Arizona. One form, titled "Counselor/Clinician Certification—Mature Decision," reflects that a counseling intern counseled B.S. three days before B.S. filed her petition with the court. Preprinted language in the form states that the intern discussed with B.S. the availability and "pros and cons" of "choices the woman has regarding the pregnancy; parenting, adoption or abortion." Further, the intern related "the risks involved in the various types of medical procedures" for abortions. At the bottom of the form, the intern signed a statement that " B.S. is sufficiently mature to make her own decision in her own best interest based on a rational and thought-out analysis of the factors involved and the options available."

¶ 23 The second Planned Parenthood form, bearing the caption "Parental Consent Information," provides a checklist of biographical information about B.S. That form also states

that B.S. "received advice from a counselor or other person" concerning (1) securing parental consent instead of a court order, (2) abortion and the alternatives to abortion, (3) the medical and physical risks of an abortion and of carrying the baby to term, and (4) the consequences to her and others from an abortion or from carrying the baby to term and raising it or placing it for adoption. The form states that the same counseling intern who signed the certification also verified the information on the checklist.

¶ 24 We agree with the court's observation made at the hearing that the Planned Parenthood forms are conclusory and provide no foundation for the counseling intern's opinion about B.S.'s level of maturity. The forms neither reflect the period of time B.S. met with the intern nor describe the specific give-and-take of the conversation. B.S. did not testify before the court to provide this detail. In the absence of other documentary evidence or testimony, the forms did not allow the court to assess B.S.'s ability to understand and appreciate either her options or the potential risks and consequences associated with her decision.

¶ 25 B.S. also presented the court with a two-sentence, handwritten letter, purportedly from a high school teacher, which states that B.S. is a good student in class and, to the teacher's knowledge, has not been disciplined at school. As the court noted at the hearing, the letter bears no indicia that it was authored by B.S.'s teacher. The letter is not written on school or personal letterhead and is not witnessed. Consequently, the court could not determine its authenticity. Additionally, although the letter provides some evidence of B.S.'s intellect, standing alone, it does not establish that B.S. is sufficiently mature to give informed consent.

¶ 26 Other evidence presented by B.S. was similarly insufficient. B.S. informed the court that she had not yet been examined by a physician, although she had confirmed her pregnancy through a test. The record does not reflect whether the counseling intern who met with B.S. possessed sufficient knowledge to adequately discuss with B.S. the medical risks associated

with any option. Therefore, the court could not know whether B.S. had received and understood accurate medical information about the consequences and risks of both pregnancy and abortion. Without such information, B.S. lacked sufficient perspective to give informed consent to an abortion.

¶ 27 B.S.'s attorney also informed the court that her client had read "material" about her options. But neither the attorney nor B.S. described these materials or related B.S.'s understanding of them. B.S.'s attorney did not elicit any testimony from B.S. or present any other evidence.[5]

¶ 28 In response to the court's questioning, B.S. explained she desired an abortion because she could not afford to raise a child, and she did not want to be responsible for the child having a bad life. She also related why she had not asked her parents to consent to an abortion. Although this evidence was competent and relevant to the maturity determination, *see infra* ¶ 33, we cannot say it established that B.S. possessed sufficient maturity to give informed consent. The questions and answers on these topics lasted just over one minute. Additionally, the juvenile court was in the best position to judge B.S.'s demeanor and credibility during this exchange and then decide the impact of her answers on the issue of maturity. Finally, B.S.'s statements did not concern her understanding and consideration of her options or the risks associated with an abortion.

¶ 29 In summary, because reasonable evidence supports the juvenile court's finding that B.S. did not present competent evidence that she is sufficiently mature to give informed consent to an abortion, that finding is not clearly erroneous.

**B.**

¶ 30 At the conclusion of the hearing, the court observed that B.S.'s unwillingness to consult with her mother about the pregnancy evidenced a lack of maturity. B.S. argues the juvenile court erred because it improperly hinged the maturity determination on whether B.S. had sought her mother's consent for an abortion.

¶ 31 B.S. correctly points out that A.R.S. § 36–2152 does not require a minor to consult with her parent or guardian about the abortion decision before petitioning for a judicial bypass order. The juvenile court cannot add such a condition in the guise of determining whether a minor possesses sufficient maturity to give informed consent to an abortion independent of her parents or guardian. *Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978) (citation omitted) (holding "court[s] should avoid legislating a particular result by judicial construction"); *State ex rel. Lassen v. Harpham*, 2 Ariz.App. 478, 487, 410 P.2d 100, 109 (1966) (acknowledging court could not "judicially legislate" by adding provision to statute). However, the court is not prevented from considering how the minor reached this decision in evaluating her maturity level.

¶ 32 The court explicitly stated during the hearing that it did not consider parental consultation as a condition to receiving a judicial bypass of the parental consent requirement. During the hearing held the next day on B.S.'s motion for reconsideration, which B.S. withdrew, the court reiterated this position. However, the court expressed its belief that in making the maturity determination, it could examine a minor's decision not to consult her parents or guardian. We do not discern reversible error.

¶ 33 In determining whether a minor possesses sufficient maturity to secure judicial bypass of parental consent for an abortion, the court properly considers the manner in which the minor makes significant decisions, including her decision to obtain an abortion. *See H——B——*, 639 F.Supp. at 954. Such consideration may include how and

---

**5.** At oral argument before this court, B.S.'s attorney faulted the juvenile court for not engaging B.S. in a meaningful dialogue to determine her maturity level. But the petitioning minor bears the burden of proof under A.R.S. § 36–2152(B). *See supra* ¶ 9. Thus, in future proceedings, counsel should elicit testimony from the minor and/or introduce whatever additional evidence exists to demonstrate the minor's entitlement to a judicial bypass order. Indeed, in this case, B.S.'s attorney informed us that she could have presented the juvenile court with additional evidence to establish B.S.'s maturity level.

why the minor decided to make the determination without parental input. The minor's approach to deciding whether parental involvement is warranted may reveal either a mature or immature manner of making an important decision.

¶ 34 We need not decide whether the court erred by commenting that B.S.'s reasons for not consulting with her mother evidenced immaturity. The court did not base its decision on this assessment. Rather, it denied the petition based on the insufficiency of competent evidence. Because reasonable evidence supports this finding, *see supra* ¶¶ 22–29, it is not clearly erroneous, and we must affirm.

## CONCLUSION

¶ 35 For the foregoing reasons, we decide that a pregnant juvenile who seeks a judicial bypass order pursuant to A.R.S. § 36–2152 bears the burden of proving her entitlement to the order by clear and convincing evidence. Because reasonable evidence supports the juvenile court's finding that B.S. failed to satisfy her burden in this case, we affirm.

CONCURRING: G. MURRAY SNOW, Presiding Judge and JON W. THOMPSON, Judge.