**In re Jane DOE 2.**

No. 00–0191.

Supreme Court of Texas.

March 7, 2000.

## OPINION

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice BAKER, Justice HANKINSON, Justice O'NEILL, and Justice GONZALES joined, and in which Justice OWEN joined in Part VII.

### I.

The court of appeals affirmed the trial court's denial of a minor's request for waiver of parental notification to obtain an abortion. We vacate the judgments of the court of appeals and the trial court and remand to the trial court for proceedings consistent with this opinion.

### II.

Jane Doe is a pregnant, unemancipated minor. Under Family Code section 33.003, Doe applied to the trial court for an order allowing her to have an abortion without notifying her parents.[1] The trial court appointed her an attorney and, as the Family Code permits, also designated the attorney to serve as her guardian ad litem.[2] After a hearing the trial court denied the application and made the following factual findings: (1) that the minor was not mature and sufficiently well informed to decide to have an abortion without notifying either of her parents; (2) that it was in the minor's "best interest to notify her parents"; and (3) that there was "no evidence that notification of [the minor's] parents may lead to physical, sexual, or emotional abuse...."

The trial court then concluded *sua sponte* that the judicial bypass provision of the parental notification law was unconstitutional for three reasons. First, the provision's two-day deadline for a trial court's determination infringed on the judicial function and, thus, violated the Texas Constitution's separation-of-powers clause.[3] Second, the statute's confidentiality provisions violated the Texas Constitution's open courts provision.[4] And third, the bypass provision's two-day time period violated fundamental due process.[5] Affirming, the court of appeals stated that its decision was based on the trial court's findings of fact, and that consequently it did not reach the trial court's constitutional questions. Here, Doe challenges all three of the trial court's factual findings. She also asserts that the court of appeals erred in not considering the bypass provision's constitutionality and that the provision is constitutional.

Because the hearing in this case was conducted before our opinion in *In re Jane Doe (Doe 1)*,[6] and because this court has not previously considered section 33.003's best interests and potential abuse prongs, we vacate the judgments of the courts below and remand to the trial court for a new hearing in light of this opinion and *Doe 1*.

### III.

Doe contends that the trial court erred in finding that she was not mature and sufficiently well informed to consent to an abortion without notifying either of her

---

1. *See* TEX. FAM.CODE § 33.003.

2. *See id.* § 33.003(e). We recognize that this dual capacity may create a conflict of interest. In this case, however, the record reveals no such conflict.

3. TEX. CONST., art. II, § 1.

4. TEX. CONST., art. I, § 13.

5. TEX. CONST., art. I, § 19.

6. 19 S.W.3d 249 (Tex.2000).

parents. In *Doe 1*, which was decided after the trial court's hearing in this case, we set forth three showings that a minor must make to establish that she is sufficiently well informed. First, "she must show that she has obtained information from a health-care provider about the health risks associated with an abortion and that she understands those risks." [7] Second, "she must show that she understands the alternatives to abortion and their implications." [8] Third, "she must show that she is also aware of the emotional and psychological aspects of undergoing an abortion...." [9] On the question of maturity, we held that if a court determines that the minor is not mature enough to decide to have an abortion without notifying her parents, "the court should make specific findings concerning its determination so that there can be meaningful review on appeal." [10]

Because we delivered our opinion in *Doe 1* after the hearing in this case, the *Doe 1* factors were not available for the trial court to apply. For the same reason, the minor could not know the evidence to needed to meet the *Doe 1* factors. On remand, the trial should consider at a subsequent hearing whether Doe was "mature and sufficiently well informed" in light of *Doe 1*.

### IV.

Doe also challenges the trial court's denial of her application on the ground that "notification would not be in [her] best interests...." [11] Before we determine the merits of Doe's claim, we must first decide what standard of review applies to a trial court's "best interests" determination under this statute.

■ We conclude that an appellate court should review a trial court's determination regarding whether notification is in the minor's best interests under the abuse of discretion standard. Unlike the "mature and sufficiently well informed" determination, in which the trial court is solely making factual findings, determining the minor's best interests requires the trial court to balance the possible benefits and detriments to the minor in notifying her parents. This type of balancing necessarily involves the exercise of judicial discretion and should be reviewed on that basis. [12] Moreover, in many other family law contexts, such as custody, [13] adoption, [14] and child support, [15] we review a trial court's best interests findings for abuse of discretion. (We recognize, however, that courts of appeals have reviewed best interests determinations in termination-of-parental-rights cases [16] and juvenile justice matters [17] for legal and factual sufficiency.) Because of the discretionary nature of the trial court's determination and the similarity to review of best interests findings in other family law contexts, we hold that

7. *Id.* at 256.

8. *Id.* at 256.

9. *Id.* at 256.

10. *Id.* at 257.

11. Tex. Fam.Code § 33.003(i).

12. *See Doe 1*, 19 S.W.3d at 253; *General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex. 1998).

13. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982).

14. *See In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984).

15. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990).

16. *See, e.g., In re M.D.S.*, 1 S.W.3d 190, 200 (Tex.App.—Amarillo 1999, no pet.); *In re R.D.*, 955 S.W.2d 364, 368 (Tex.App.—San Antonio, pet. denied); *Edwards v. Texas Dep't of Protective and Regulatory Servs.*, 946 S.W.2d 130, 138 (Tex.App.—El Paso 1997, no writ); *Dupree v. Texas Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 86–87 (Tex. App.—Dallas 1995, no writ).

17. *See In re S.A.M.*, 933 S.W.2d 744, 746 (Tex.App.—San Antonio 1996, no writ).

abuse of discretion is the proper standard of review.

■ Before setting out guidelines for the best interests determination, we note that the trial court specifically found that it would be in Doe's best interests to notify her parents. That is not the proper inquiry under the statute, which directs the court to consider whether "notification *would not* be in the best interests of the minor...." [18]

■ To determine whether notification would not be in the minor's best interests, the trial court should weigh the advantages and disadvantages of parental notification in the minor's specific situation. Although the best interests determination necessarily involves evaluating whether notification could lead to abuse of the minor, that the Legislature included the potential for abuse as a separate reason for granting a bypass makes it clear that the best interests determination encompasses a broader concern for the minor's welfare. In *Holley v. Adams*,[19] we developed a list of non-exhaustive factors for determining a minor's best interests.[20] Four of these factors are relevant when adapted to the parental notification context, and a trial court should consider them in determining best interests: (1) the minor's emotional or physical needs; (2) the possibility of emotional or physical danger to the minor; (3) the stability of the minor's home and whether notification would cause serious and lasting harm to the family structure; and (4) the relationship between the parent and the minor and the effect of notification on that relationship.[21] An additional factor that courts in other jurisdictions have considered is whether notification may lead the parents to withdraw emotional and financial support from the minor.[22] This list is not exhaustive, and in making the best-interests determination the trial court should consider all relevant circumstances. We note, however, that a minor's generalized fear of telling her parents does not, by itself, establish that notification would not be in the minor's best interests.[23]

■ Also, as with the maturity determination, meaningful appellate review is possible only if the trial court makes specific findings about its determination that the minor has not shown that notification is not in her best interests.[24] Similarly, if the trial court's determination depends on its assessment of the minor's credibility, it should make specific findings on that issue.[25]

■ Upon reviewing this record, we cannot conclude that the trial court abused its discretion as a matter of law in finding that Doe had not established that notifying her parents would not be in her best interests. On remand, the trial court at a subsequent hearing should apply the standards we articulate in this opinion to determine whether notification would not be in the minor's best interest. The trial court should also make the specific findings necessary for its determination.

---

18. Tex. Fam.Code § 33.003(i)(emphasis added).

19. 544 S.W.2d 367 (Tex.1976).

20. *See id.* at 371–72; *see also In re Marriage of Bertram*, 981 S.W.2d 820, 822–23 (Tex. App.—Texarkana 1998, no pet.)(applying the *Holley* factors to determine best interests in a conservatorship proceeding).

21. *See Holley*, 544 S.W.2d at 371–72; *see also In re Petition of Doe for Waiver of Notice*, 19 Kan.App.2d 204, 866 P.2d 1069, 1075 (1994)(using similar factors for the best inter-ests determination in applying a parental notification statute).

22. *See In re Petition of Doe for Waiver of Notice*, 866 P.2d at 1075; *In re Complaint of Doe*, 83 Ohio App.3d 904, 615 N.E.2d 1142, 1143 (1992)(per curiam).

23. *See In re E.H.*, 240 Ga.App. 91, 524 S.E.2d 2, 3 (1999); *In re T.P.*, 475 N.E.2d 312, 315 (Ind.1985); *In re Anonymous 2*, 253 Neb. 485, 570 N.W.2d 836, 840 (1997).

24. *See Doe 1*, 19 S.W.3d at 257.

25. *See id.*

## V.

 Doe also asserts that notifying her parents may cause them to abuse her emotionally or physically. Under the statute, the trial court must grant an order allowing the minor to consent to an abortion without notifying her parents if it finds by a preponderance of the evidence that "notification may lead to physical, sexual, or emotional abuse of the minor."[26] In its findings of fact, the trial court found that there was "no evidence" that notifying the minor's parents would lead to abuse. We review this factual finding for legal sufficiency.[27]

 Doe testified that she was afraid of her father, that he had a temper, and that he had slapped her, but that he had never beat her.[28] While Doe's testimony is not conclusive, it is some evidence of the potential for abuse. The record therefore does not support the trial court's finding that there was *no evidence* that notification may lead to abuse.

On remand the trial court must determine whether, based on all the evidence presented at the subsequent hearing, a *preponderance* of the evidence supports a finding that notification *may* lead to abuse. For meaningful appellate review the trial court must make specific findings concerning the potential for abuse.[29] Similarly, if the trial court determines that the minor's testimony about potential abuse is not credible, it should also make specific findings in that regard.[30]

 That we have provided trial courts forms for making findings of fact and conclusions of law should not prevent them from making the specific findings we require for the maturity, best interests, and potential abuse determinations. These forms are analogous to our forms allowing minors to check off that they have satisfied one or more of the statutory requirements. A minor's testimony merely parroting the language on the form is not sufficient for a judicial bypass without testimony regarding her specific circumstances. Likewise, the mere fact that the trial court has checked a box on a form does not demonstrate that it has given the careful consideration necessary for such a significant decision. Moreover, the form itself contemplates more specificity, as it includes a place for comments under each of the three statutory requirements, in which the trial court can and should detail its findings.

## VI.

 Although Doe has not established that she is entitled to a judicial bypass as a matter of law, we nevertheless vacate the judgments of the courts below and remand for another hearing. Our authority to do so comes from Texas Rule of Appellate Procedure 60.2(f), which allows us to "vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law."[31] Although we have never used this rule to remand for a new hearing in the trial court,[32] the rule's plain language does not preclude us from doing so. This rule is particularly well-suited to situations such as this one, where courts must apply the requirements of a unique or novel statutory scheme. Here,

---

26. Tex. Fam.Code § 33.003(i).

27. *See Doe 1,* 19 S.W.3d at 253; *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

28. Where paraphrasing is sufficient to convey the gist of testimony from the application hearing, we will not quote the testimony because the statute mandates that the record remain confidential. *See* Tex. Fam.Code § 33.003(k).

29. *See Doe 1,* 19 S.W.3d at 257.

30. *See id.*

31. Tex.R.App. P. 60.2(f).

32. *See, e.g., Bacon v. General Devices, Inc.,* 830 S.W.2d 106, 107 (Tex.1992); *Welex, A Div. of Halliburton Co. v. Broom,* 816 S.W.2d 340 (Tex.1991) (both remanding to the court of appeals for reconsideration in light of changes in the law).

remanding for a subsequent hearing is appropriate because the trial court conducted its hearing before we decided *Doe 1*, in which we established the factors for the "mature and sufficiently well informed" determination, and before we had considered the best interests and potential for abuse prongs. Our disposition thus allows Jane Doe to present evidence based on *Doe 1* and this opinion and allows the trial court to evaluate that evidence based on these two opinions.

## VII.

■ Finally, we consider the trial court's determination that Chapter 33 of the Family Code is an unconstitutional violation of the separation-of-powers clause,[33] the open courts provision,[34] and due process.[35] The trial court raised this issue *sua sponte* without benefit of argument or briefing. Doe argues that the statute is constitutional and that the trial court erred in addressing these constitutional questions in this case. We agree that the trial court erred in addressing the constitutional issues and express no opinion on them.

■ We have previously cautioned that the constitutionality of a statute should be considered only when the question is properly raised and such determination is necessary and appropriate to a decision in the case.[36] The presumption is that a statute enacted by our Legislature is constitutional,[37] and attacks on that presumption should generally be raised as an affirmative defense to enforcement of the statute.[38] In the absence of an appropriate pleading raising the issue of unconstitutionality, the trial court is generally without authority to reach the issue.[39]

The minor could raise a constitutional challenge herself, but time constraints often may make such a challenge impractical. Chapter 33 provides for an expedited, confidential, and nonadversarial hearing for determining whether the minor may obtain an abortion without parental notice. In other states, similar parental notification bypass provisions have been challenged by interested parties through declaratory judgment actions.[40]

Under the circumstances of this case and in the context of this unique proceeding, we conclude that the trial court erred in both raising and deciding the constitutional issue. Accordingly, we reverse that part of the trial court's judgment determining the statute to be unconstitutional and, without reference to the merits, vacate that part of its judgment.

## VIII.

For the above reasons, we remand Jane Doe's application to the trial court for proceedings consistent with this opinion. The proceedings in the trial court must be con-

---

33. TEX. CONST. art. I, § 2.

34. TEX. CONST. art. I, § 13.

35. TEX. CONST. art. I, § 19.

36. *See Wood v. Wood*, 159 Tex. 350, 320 S.W.2d 807, 813 (1959)("constitutionality of a statute will be considered only when the question is properly raised and a decision becomes necessary and appropriate to the disposal of the case and no statute should be overruled without careful and mature consideration").

37. *See Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983).

38. See *State v. Scott*, 460 S.W.2d 103, 107 (Tex.1970).

39. *See Houston Chronicle Pub. Co. v. City of Houston*, 531 S.W.2d 177, 183 (Tex.Civ. App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e.*, 536 S.W.2d 559 (Tex.1976); *cf. Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993)("a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal").

40. *See, e.g., Lambert v. Wicklund*, 520 U.S. 292, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997)(physicians who perform abortions filed declaratory judgment action challenging Montana statute); *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976)(physicians challenging Missouri statute).

cluded as if Doe's application had been filed the next business day after our opinion issues. In the event that Doe requires additional time after issuance of this opinion to prepare for a hearing, she may request an extension of time.[41]

Justice OWEN filed a concurring opinion.

Justice HECHT filed a dissenting opinion, in which Justice ABBOTT joined.

Justice OWEN, concurring.

The Court has failed to give effect to the Legislature's intent regarding the "best interest" prong of section 33.003(i) of the Family Code when minors seek to have an abortion. The Court has omitted any requirement that a trial court find an abortion to be in the best interest of the minor. The Family Code plainly directs that a trial court should not authorize an immature and insufficiently-informed minor to proceed with an abortion unless the court finds from a preponderance of the evidence that an abortion is in the best interest of the minor and that notification of a parent would not be in the best interest of the minor. I also disagree with the standard of review chosen by the Court for "best interest" determinations. Accordingly, I join in the Court's judgment, but I join only Part VII of its opinion.

## I

The Family Code provides that no physician in the state of Texas may perform an abortion on a minor unless he or she gives at least 48 hours notice to one of the minor's parents or to her guardian. *See* Tex. Fam.Code § 33.002(a)(1), (b). There are limited exceptions to this prohibition, and those exceptions include judicial bypass provisions. *See id.* §§ 33.002(a)(2)-(3), 33.003, 33.004. The Legislature has set forth three bases on which a trial court can authorize a minor to consent to an abortion without notification of either of her parents or her guardian. One of these

is if the court determines by a preponderance of the evidence that notification would not be in the best interest of the minor. *See id.* § 33.003(i).

If a court concludes that "notification would not be in the minor's best interest," the court is directed by section 33.003(i) to authorize the minor to proceed with an abortion. *Id.* The inquiry under the "best interest" provision is not simply whether notifying a parent that the minor is pregnant and is seeking an abortion would be in the minor's best interest. The inquiry is whether *proceeding with an abortion* without notification of a parent is in the minor's best interest. Thus, there necessarily are two interrelated considerations within the "best interest" provision: (1) whether an abortion is in the minor's best interest and (2) whether notification of a parent that the minor is proceeding with an abortion would not be in the minor's best interest.

This is the only reasonable construction of 33.003(i). A "best interest" determination will not be dispositive unless the court has concluded that the minor is not mature or sufficiently well informed to make the decision to have an abortion without notifying a parent and the court is unpersuaded that notifying a parent may lead to physical, sexual, or emotional abuse of the minor. Surely the Legislature did not intend for a minor to proceed with an abortion under the "best interest" aspect of section 33.003 when there has been no informed determination by a parent, a court, or the minor herself that the abortion is in her best interest.

The Court's interpretation of the "best interest" prong of section 33.003 is deficient because it focuses only on "notification." The Court does not inform trial courts that they can only conclude that "notification would not be in the best interest of the minor" if they also conclude that an abortion would be in the best interest of the minor. *See* Tex. Fam.Code § 33.003(i).

41. *See* Tex. Fam.Code § 33.003(h).

Instead, the Court says that a trial court "should weigh the advantages and disadvantages of parental notification." 19 S.W.3d at 282. None of the factors set forth by the Court seem concerned with whether *an abortion* without notification is in the minor's best interest.

That there must be a two-faceted inquiry in determining "best interest" is evident not only from sections 33.002 and 33.003(i), but from their origin and from decisions of the United States Supreme Court that construed similar provisions prior to the enactment of sections 33.002 and 33.003. The Supreme Court has concluded that a statute requiring parental consent before a minor can obtain an abortion must contain a bypass provision to be constitutional. *See City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 439–42, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1982) (*Akron I* ) (holding parental-consent statute unconstitutional) (citing *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) (*Bellotti II* ) with approval). The bypass mechanism set forth in *Bellotti II* contemplates that a court would determine whether an abortion is in a minor's best interest if it concluded that the minor was not sufficiently mature and well informed to make the decision to have an abortion:

> A pregnant minor is entitled ... to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests.

*Id.* at 643–44, 99 S.Ct. 3035.

Texas, like several other states, has enacted a parental-notification statute rather than a parental-consent statute. But similar to consent statutes, the Texas parental-notification scheme contains a judicial bypass mechanism that includes "best interest" as one avenue for a minor to obtain authorization for an abortion. The United States Supreme Court has considered "best interest" provisions that are virtually identical to those found in the Texas Family Code bypass provisions. *See Lambert v. Wicklund*, 520 U.S. 292, 295, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997); *Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 511–13, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1989) (*Akron II* ). That Court refused to interpret "notification of a parent or guardian is not in the best interests of the [minor]" to mean that there was any separation between "the question whether parental notification is not in a minor's best interest from an inquiry into whether abortion (without notification) is in the minor's best interest." *Lambert*, 520 U.S. at 298, 117 S.Ct. 1169. The Supreme Court explained that "a judicial bypass procedure requiring a minor to show that *parental notification is not* in her best interests is equivalent to a judicial bypass procedure requiring a minor to show that *abortion without notification is* in her best interests." *Id.* at 297–98, 117 S.Ct. 1169 (emphasis in original) (explaining the Court's holding in *Akron II* ). The concurring opinion in *Lambert* specifically disagreed with the majority that "a young woman must demonstrate both that abortion is in her best interest and that notification is not." *Id.* at 302, 117 S.Ct. 1169 (Stevens, J., concurring in judgment).

The Texas Legislature enacted section 33.003(i), including the "best interest" provision, two years after the *Lambert* decision was handed down. Undoubtedly, the Legislature was aware of the interpretation the highest court in the land had given to the words "notification of a parent or guardian is not in the best interests" of the minor. *See Lambert*, 520 U.S. at 294, 300, 117 S.Ct. 1169. And undoubtedly the Legislature intended for Texas courts to be guided by *Lambert* in construing the "best interest" provision. Nevertheless, the Court today sides with *Lambert* 's concurrence rather than a majority of the Supreme Court.

## II

I also find the factors that the Court has enumerated for determining "best interest" problematic. First, they are not particularly enlightening. For example, the Court lists "the minor's emotional or physical needs." 19 S.W.3d at 282. What does this mean in the context of a pregnant minor who wants to obtain an abortion without telling her parents? The Court also directs trial courts to consider "the stability of the minor's home and whether notification would cause serious, and lasting harm to the family structure." 19 S.W.3d at 282. Does this mean that an unstable home weighs in favor of or against an abortion for a minor? How is a court to weigh the fact that the minor has a stable home?

The Court makes no mention of considering how non-notification may affect the family structure. Similarly, when the Court cites as a factor "the relationship between the parent and the minor and the effect of notification on that relationship," *id.* at 282, the Court does not consider the effect of non-notification. "Best interest" surely encompasses an examination of the ramifications of notifying as well as not notifying a parent.

*Bellotti II* was insightful when it observed that "the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors." 443 U.S. at 643 n. 23, 99 S.Ct. 3035. The same is true when determining a minor's best interest. This is the first case presented to our Court under the "best interest" provision in section 33.003(i). I do not think it wise to offer vague guidelines to trial courts when those guidelines, although not exhaustive, are necessarily promulgated in a vacuum with no real-world experience under the Family Code. More importantly, I share JUSTICE HECHT's concern that the Court's standards for determining "best interest" are far lower than the Legislature intended.

## III

The trial court in this case concluded that "it is in [Jane Doe's] best interest to notify her parents." I note that the Family Code does not require that both parents be notified, only that "a parent" be notified. TEX. FAM.CODE § 33.002(a)(1)(A); *see also id.* § 33.003(i) (referring to notification of "either of her parents"). The constitutionality of requiring a minor to notify *both* parents is questionable. *See Hodgson v. Minnesota*, 497 U.S. 417, 450–55, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (striking down statute that required consent of both parents as unconstitutional).

But with regard to the ultimate merits, the trial court did not err in failing to find that "notification would not be in [Jane Doe's] best interest." TEX. FAM.CODE § 33.003(i). The only evidence in the record that even remotely relates to whether it would not be in Jane Doe's best interest to notify one of her parents is as follows: Jane Doe lives at home with her parents. She is in high school and participates in extracurricular activities. She testified that she has been seeing the father of her unborn child for some time, and Jane Doe believes that during that time her mother has experienced health problems primarily from worry about this relationship. Jane Doe is concerned that her mother's health might suffer further if she were told of her daughter's pregnancy. Jane Doe also testified that she is scared of her father, that "[h]e's never beat me, but he's hit me. He has a—he has just like slapped me and he has a temper and he might, I don't know, kick me out of the house or something."

The Court holds today that the trial court's failure to find that notification would not be in Jane Doe's best interest must be reviewed for an abuse of discretion. As I explain in Part V, I would apply a legal sufficiency standard of review. There are two inquiries for a reviewing court when it applies that standard to a situation where, as here, a party bears the burden of proof and the factfinder fails to find for that party. *See Sterner v. Mara-*

*thon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). First, the record must be examined for evidence that supports the factfinder's failure to find for the party with the burden of proof. *See id.* Second, if there is no evidence to support the failure to make a finding, then, "the entire record must be examined to see if the contrary proposition is established as a matter of law." *Id.*

There is evidence that would support the trial court's failure to find that notification of one of Jane Doe's parents would not be in her best interest. And Jane Doe did not establish as matter of law that notification of one of her parents would not be in her best interest or that obtaining an abortion would be in her best interest. Even if an abuse of discretion standard were applied, the factual record is not such that the trial court could reach but one conclusion. *See In re Epic Holdings, Inc.,* 985 S.W.2d 41, 56–57 (Tex.1998) (explicating the abuse of discretion standard).

## IV

The evidence that pertains to the third prong of section 33.003(i), which is "whether notification may lead to physical, sexual, or emotional abuse of the minor," has been set forth above in the discussion of "best interest." Jane Doe's statement that her father had slapped her does not establish as a matter of law that she may be physically abused if one of her parents is notified that she is proceeding to obtain an abortion. Jane Doe did not explain when the slapping incident occurred, its severity, or any of the circumstances surrounding it. Moreover, the Family Code only requires notice to one parent. The trial court was not required to assume that Jane Doe's father rather than her mother would be notified. Similarly, under an abuse of discretion standard, the evidence is not such that the only conclusion that the trial court could reach was that Jane Doe may be physically abused if one of her parents is notified.

## V

The Court holds that an abuse of discretion standard should be applied in reviewing determinations under the "best interest" prong of section 33.003(i). The Court reasons that determining best interest "requires the trial court to balance the possible benefits and detriments to the minor," and that in "other family law contexts, such as custody, adoption, and child support," an abuse of discretion standard is applied. 19 S.W.3d at 281 (authorities omitted).

The Court acknowledges that in parental-termination cases, our courts of appeals have applied legal and factual sufficiency. 19 S.W.3d at 281. Indeed this Court has applied that standard in termination cases in which the best interest of the child is an issue. *See Holley v. Adams,* 544 S.W.2d 367, 370–71, 373 (Tex.1976) (applying the no evidence standard of review in a termination of parental-rights case and holding that there was no evidence that termination of mother's parental rights was in the best interest of the child); *see also Richardson v. Green,* 677 S.W.2d 497, 501–02 (Tex.1984) (applying the no evidence standard of review in a termination of parental-rights case); *In re M.D.S.,* 1 S.W.3d 190, 199–201 (Tex.App.—Amarillo 1999, no pet.) (same); *In re R.D.,* 955 S.W.2d 364, 368–69 (Tex.App.—San Antonio 1997, pet. denied) (same); *Edwards v. Texas Depart. of Protective & Regulatory Servs.,* 946 S.W.2d 130, 138–39 (Tex.App.—El Paso 1997, no writ) (same); *Dupree v. Texas Depart. of Protective & Regulatory Servs.,* 907 S.W.2d 81, 83, 86–87 (Tex. App.—Dallas 1995, no writ) (same); *In re A.D.E.,* 880 S.W.2d 241, 245–46 (Tex. App.—Corpus Christi 1994, no writ) (same).

The determination of whether notification would not be in the best interest of a minor is more analogous to parental-termination cases than to custody decisions. In custody cases, the issues generally are how various rights and responsibilities for child rearing and support are to be allocated

between the two parents. The trial court's decision is not irrevocable, and the court has continuing jurisdiction. That is not the case in either parental-termination or parental-notification matters.

But even in custody matters, at least two courts of appeals have applied the legal and factual sufficiency standard of review. *See In re Rodriguez,* 940 S.W.2d 265, 270, 271–74 (Tex.App.—San Antonio 1997, writ denied); *R.S. v. B.J.J.,* 883 S.W.2d 711, 714, 720 (Tex.App.—Dallas 1994, no writ). In those cases, the rights of the children's biological parents had not been terminated, but the trial courts nevertheless appointed non-parents as managing conservators.

This Court's treatment of the Family Code sections dealing with the "best interest" aspect of parental termination is inconsistent with its treatment of the "best interest" aspect of section 33.003(i). In applying a standard of review, this Court has not separated the "best interest" inquiry in the Family Code's parental-termination provisions from the other enumerated inquiries. *Compare* TEX. FAM.CODE § 161.001 (regarding termination of the parent-child relationship) *with id.* § 33.003(i) (regarding authorization of minors to obtain an abortion without notification of a parent or guardian). I find it anomalous that the Court is doing so with the parental-notification bypass provisions.

The statute itself should be the touchstone in deciding which standard of review should apply. Section 33.003 is distinguishable from statutes under which a trial court may or may not, in its discretion, make an award or reach a particular conclusion. For example, the Declaratory Judgment Act provides that a trial court "may" award attorney's fees if it determines that to do so would be "equitable and just." TEX. CIV. PRAC. & REM.CODE § 37.009; *see also Bocquet v. Herring,* 972 S.W.2d 19, 20–21 (Tex.1998). The matter is left to the sound discretion of the trial court. By contrast, if a trial court makes one of the three possible findings under

section 33.003(i), it "shall enter an order authorizing the minor to consent to the performance of the abortion without notification." TEX. FAM.CODE § 33.003(i); *see also In re Jane Doe,* 19 S.W.3d 249, 253 (Tex.2000) (*Jane Doe I*). The trial court has no discretion in the matter. The Family Code further requires a trial court to make its determination based on a preponderance of the evidence, which is a more-likely-than-not proof requirement. That is different from a discretionary or "equitable and just" determination.

Section 33.003 also requires trial courts to issue written findings of fact and conclusions of law at the close of what is a final trial on the merits. *See* TEX. FAM.CODE § 33.003(h). Proceedings under section 33.003 should be treated no differently than any other bench trial. The trial court's findings should be reviewed on appeal for legal and factual sufficiency.

As a practical matter, it makes virtually no difference in this Court whether we review "best interest" determinations under section 33.003(i) based on abuse of discretion or legal sufficiency. If there is some evidence to support the trial court's determination, we must let it stand, as long as the law was correctly applied to the facts as found by the trial court. However, there is a material difference in the courts of appeals. Under an abuse of discretion standard, courts of appeals do not have the option of remanding a case if the trial court's decision was supported by some evidence but was against the great weight and preponderance of the evidence. An appellate court may not attempt to reconcile disputed factual matters under an abuse of discretion standard. *See In re Epic Holdings,* 985 S.W.2d at 56–57. Under that standard, a "reviewing court must defer to the trial court's resolution of factual issues, and may not set aside the trial court's finding unless the record makes it clear that the trial court could reach only one decision." *Id.* at 56 (citing *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex. 1992)).

Section 33.003 does not expressly or even implicitly foreclose a remand by a court of appeals for factual insufficiency. There is no indication that appeals under section 33.003 differ from traditional appeals in which the courts of appeals would have the authority to reverse a trial court's determination under the "best interest" prong of section 33.003(i) and to remand the matter to the trial court if the trial court's failure to find is against the great weight and preponderance of the evidence. Remanding for factual insufficiency will not unduly or unconstitutionally delay bypass proceedings.

## VI

Finally, I would say more than the Court has said about potential conflicts of interest in bypass proceedings under section 33.003. The attorney appointed by the trial court to represent Jane Doe was also appointed as her guardian ad litem. At the beginning of the hearing, her attorney/guardian ad litem advised her that a conflict could arise because of the obligation to represent her and the obligation to assist the court. Jane Doe's attorney/guardian ad litem then asked her if she nevertheless wished to proceed, and she said yes. I agree with the Court that the record does not reveal that an actual conflict materialized. But the trial court should not have appointed the same person to serve dual roles.

I recognize that the Family Code allows a trial court to appoint the same person as both the attorney and the guardian ad litem for a minor. See TEX. FAM.CODE § 33.003(e). But in many situations, an attorney cannot zealously represent the client and simultaneously discharge the ad litem's obligations to the court. Once an ad litem has conferred with a minor and a conflict becomes apparent, a new ad litem will have to be appointed, unless the minor can and does waive the conflict. That is because counsel will be conclusively presumed to have had access to the minor's confidences. See NCNB Texas Nat'l Bank

v. Coker, 765 S.W.2d 398, 400 (Tex.1989); see also Phoenix Founders, Inc. v. Marshall, 887 S.W.2d 831, 833 (Tex.1994). In view of the very short time constraints within which section 33.003 proceedings must be conducted and the complex layer that conflicts and waiver issues could add, I think it imprudent for courts to appoint the same individual as attorney and ad litem.

\* \* \* \* \*

Because this Court has not previously addressed the "best interest" aspect of section 33.003(i), and because the hearing in this case was conducted before this Court issued its opinion in In re Jane Doe, 19 S.W.3d 249 (Tex.2000) addressing "mature and sufficiently well informed," I agree that it should vacate the judgments of the courts below and remand to the trial court for further proceedings in the interest of justice. See Morrow v. Shotwell, 477 S.W.2d 538, 541–42 (Tex.1972); see also TEX.R.APP. P. 60.2(f) (providing that this Court may "vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law"); TEX.R.APP. P. 60.3 (providing that our Court "may, in the interest of justice, remand the case to the trial court even if a rendition of judgment is otherwise appropriate"). But see Scott v. Liebman, 404 S.W.2d 288, 294 (Tex.1966) (stating that under former Texas Rule of Civil Procedure 505, this Court did not have the discretion to reverse an errorless judgment and remand in the interest of justice).

Accordingly, I join in the judgment of the Court, but only Part VII of its opinion.

Justice HECHT, joined by Justice ABBOTT, dissenting.

The Court advances apace in its assault on the fundamental, constitutional rights of parents and families that the Legislature attempted to protect with the Parental

Notification Act.[1] Last week, in its first *In re Doe*[2] opinion—which the Court has decided to rename *In re Doe 1* because it looks as if the Court is going to be reversing the lower courts' denials of applications regularly enough that no one will know which *Doe* is which if the opinions are not differentiated by sequential Arabic numerals—the Court held that the Act's requirement that a minor be "sufficiently well informed" to have an abortion without telling her parents means only that she has received minimal information about her decision.[3] Any competent lawyer can lead a reasonably coherent minor through the Court's simple checklist. A minor is "mature", the other part of the Act's requirement, if she is not impulsive and has given some thought to the information she has received.[4] The Act's bar to teenage abortions without parental involvement is set ankle-high, according to the Court, and any minor who can hurdle it is, as a matter of law, entitled to have her application granted. This anemic law is all the Court says the Legislature conceived after months of labor to deliver a healthy statute. Before the Act a minor needed only a willing clinician to obtain an abortion without parental notification; now a minor needs only a State-paid attorney.

That, as I say, was *Doe 1*. This week along comes *Doe 2*, which holds that the Act's best-interest and abuse standards are no higher than the "mature and sufficiently well informed" standard construed and applied in *Doe 1*. What does the Act mean by requiring that it be in a minor's best interest not to tell her parents that she intends to have an abortion? According to the Court, really no more than that notification be potentially upsetting to the minor or her parents.[5] Indeed. Imagine the household in which the junior high or high school daughter announces to unsuspecting parents, without upsetting anyone, that she is pregnant and getting an abortion. Catatonic parents may be told that their daughter is having an abortion, the Court says; the Act spares all others the shock. Also, according to the Court, any evidence that a parent has ever struck a child—whether in anger or in discipline, once years ago or more recently, it makes no difference—tends to prove that the parent may abuse the daughter if told that she wants an abortion. Parents be warned: by spanking your daughter at any point in her life, you may surrender any right you have to know that she will have an abortion before she is 18.

But even less defensible than the Court's devaluation of the statutory standards for obtaining an abortion without parental involvement is the Court's demand, unsupported by the Act, that trial courts make detailed findings to support denying applications. The Act requires trial courts to make findings of fact and conclusions of law in connection with their rulings,[6] but it strongly suggests that those findings track the statutory standards for granting and denying applications.[7] And that was the position the Court took less than three months ago when it promulgated forms for the trial courts to use.[8] But now that it turns out that tracking the statutory standards makes it too easy, in the Court's view, for trial courts to deny applications, the Court requires that trial courts work harder. Not only must trial courts explain in detail why they consider a minor immature or why involving her parents would not be in her best interest, for the first time in the

---

1. Tex. Fam.Code §§ 33.001–.011. All statutory references are to the Family Code unless otherwise noted.

2. 19 S.W.3d 249 (Tex.2000).

3. *Id.* at 251.

4. *Id.* at 255.

5. *Ante,* at 257.

6. Tex. Fam.Code § 33.003(h).

7. *Id.* § 33.003(i).

8. Tex. Parental Notification Rules 2.5(a); Tex. Parental Notification Form 2D.

history of Texas jurisprudence, so far as I can tell, the Court insists that trial courts explain in detail why they choose to disbelieve all or any part of a minor's testimony. The Legislature sometimes requires specific findings, but not in this Act. Specific findings are this Court's invention to thwart the Legislature's plain intent to encourage parental participation in a child's decision whether to have an abortion, and to discourage teenage pregnancy and abortion.

The Act contemplates a higher standard than the Court sets for depriving parents of their right to counsel their minor daughter—and denying the daughter the benefit of that counsel—concerning what the United States Supreme Court has called the "grave and indelible"[9] decision to have an abortion. The Legislature gave trial courts greater discretion in deciding whether to require parental notification than the Court allows. I therefore remain in dissent.

## I

Jane Doe, age 16, lives at home with both parents. She is a junior in high school and involved in typical extracurricular activities. The record does not reflect her academic standing or whether she has ever had a job. She has applied for authority to have an abortion without telling her parents. In her application, made on Form 2A as permitted by Rule 2.1(c)(1) of the Parental Notification Rules, she claims:

> I am mature enough to decide to have an abortion without telling my parent(s).... I also know enough about abortion to make this decision.

> Telling my parent(s) ... that I want an abortion is not in my best interest.

> Telling my parent(s) ... that I want an abortion may lead to physical or emotional abuse of me.

Any one of these reasons, if proved by a preponderance of the evidence, is a basis for authorizing a minor to consent to an abortion without notice to her parents.[10]

As required by statute,[11] the trial court appointed an attorney to represent Doe, and as permitted by statute,[12] the court appointed that attorney to be Doe's guardian ad litem as well. The court then conducted a hearing attended by Doe, her attorney and guardian, and a friend. The following is a summary of Doe's testimony, the only evidence offered at the hearing.

Doe has been involved in a sexual relationship for some time. Doe did not state her partner's age or whether he is in school. She explained that she has taken birth control pills to keep from becoming pregnant. She knew they might not be completely effective but, as she told the trial court, "chose to accept that possibility and responsibility".

When Doe missed her period, she tested herself several times to confirm that she was pregnant. She did not consult a physician. After she missed a second period, she "spoke[ ] to many different facilities" that perform abortions. She has also discussed her situation with two friends, one a much older adult whom Doe has known all her life, and one whom she has known only a few years. Both agree that abortion, in Doe's words, "is the best way", and they intend to help her. Doe has told no one else that she is pregnant, including, presumably, the father of the child.

Doe has not been advised of any medical reason why she either should or should not have an abortion, but she also has not been told what risks the procedure poses to her. She testified:

---

9. *Bellotti v. Baird,* 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II* ) (plurality opinion).

10. Tex. Fam.Code § 33.003(i).

11. *Id.* § 33.003(e).

12. *Id.*

Q So you understand that there might be some medical reason why it would be inadvisable for you to go through with this procedure?

A Yes.

Q And if you're advised of that before the procedure is done then you would not go through with it—

A Yes.

Q —is that correct?

A Correct.

Doe is a member of a denominational church but has not consulted her pastor and does not wish to do so. Concerning her church's views on abortion, Doe testified: "I've looked into the religious and what my religion says on it.... They don't—they don't promote it, but they don't—it's not completely against it." Doe thought she would not be prohibited from practicing her religion in the future if she went through with an abortion.

Doe stated that she has considered carrying her pregnancy to term and keeping the baby, but, she explained, "I think these would both have the consequences on both parents and everyone around me in my school and I just think that this [i.e., abortion] is a better decision." Concerning adoption, Doe's only testimony was as follows:

A I've looked into everything—

Q You've considered—

A—possible.

Q —adoption? You've considered keeping the baby?

A Yes, sir.

Doe did not state whether she had considered marrying the father of her child, or whether she had discussed with him what she should do, or as I have already stated, whether she has even told him that she is pregnant. Doe did not indicate whether she was aware of any financial assistance that might be available to her if she had her baby.

Doe does say she plans on marrying someday and that if she has an abortion she would tell her future spouse because "it's something that they should know." She stated that she recognizes a future mate might have religious beliefs against abortion but concluded: "I believe there's consequences against it [i.e., having an abortion] and it's my responsibility to take them."

Doe's reasons for not telling her parents are, in their entirety, as follows:

Q Why do you not want to tell your mother that you're getting an abortion?

A Worried about the consequences it would have towards her and her health and in the previous two years she's had [health problems from worrying].

Q And what has she been worrying about? What has brought on her condition?

A Mainly me.

Q Okay. Any specific thing about you?

A The relationship with—I've been in a relationship for [some time] and she's—it's been hard on her.

Q And this is a relationship with the baby's father?

A Yes, sir.

Q Okay. Why do you not want to tell your father that you're getting an abortion?

A I'm scared of him. He's never beat me, he's hit me. He has a—he has just like slapped me and he has a temper and he might, I don't know, kick me out of the house or something.

Doe did not give any further explanation about when, how often, or under what circumstances her father had hit or slapped her.

Doe and her attorney then summarized for the court:

Q So you feel that this is a decision that you've made after careful and thoughtful consideration?

A I think it's to the best interest. I think it's to the best interest of the ones that it will affect.

Q And you're certain in your mind that you have no unanswered questions about your options or about the consequences of your decision?

A No, sir.

It appears that Doe intended to respond affirmatively to the last question.

Following Doe's testimony, the trial court expressed concern that Chapter 33 is unconstitutional, although Doe had not raised any such issue herself, and then stated: "I'm going to make a ruling to deny your application and declare it [i.e., the statute] is unconstitutional. . . ." The trial court made the following written findings:

1. That applicant is not mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents.
2. It is in applicant's best interest to notify her parents.
3. There is no evidence that notification of applicant's parents may lead to physical, sexual or emotional abuse of applicant.

The Court also stated written conclusions that Chapter 33 is unconstitutional on its face for the following reasons:

1. The statute forces unreasonable two day deadlines upon a court in acting in a judicial function. The automatic waiver provisions which deem an application to be granted without court action takes the discretion to act away from a court. The legislature has violated Article II, section 1 of the Texas Constitution by imposing its will upon the discretionary duty of the court to decide life or death matters resulting in a major infringement upon the judicial function.
2. The provisions of the statute making court rulings in secret violates the open court doctrine of the Texas Constitution.
3. The statutes violate fundamental due process by requiring proceedings in such a short period of time (2 days) that the legal safeguards of a full hearing are impossible. For example the right to subpoena witnesses or seek expert opinions is abrogated. A court may not exercise appropriate discretion without having such judicial tools available.

## II

In *Doe 1*, the Court reversed the court of appeals' judgment without finding any error in that judgment and remanded the case for a new trial. The Court forgot that it is virtually hornbook law in Texas that "[a] reviewing court can reverse only when there is error in the judgment of the court below." [13] "[A]n errorless judgment of a trial court cannot be reversed in the interest of justice or to permit the losing party to have another trial." [14] As former Chief Justice Calvert bluntly put it: "Attorneys frequently interpret [the rules and cases] as authorizing the supreme court to *reverse* trial court judgments in the interest of justice. Not so." [15] The same year Chief Justice Calvert wrote that statement he also authored the Court's opinion in *Morrow v. Shotwell*, which appeared to reverse an errorless judgment of the court of appeals and remand to the trial court for a new trial in the interest of justice because the case was tried on the wrong legal theory.[16] But *Morrow* has never

---

**13.** *Davis v. Bryan & Bryan, Inc.*, 730 S.W.2d 643, 644 (Tex.1987) (per curiam) (citing *City of Houston v. Blackbird*, 394 S.W.2d 159 (Tex. 1965), and *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530 (1948)).

**14.** *Uselton v. State*, 499 S.W.2d 92, 99 (Tex. 1973); *accord Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966) (citing cases).

**15.** Robert W. Calvert, *". . . in the Interest of Justice"*, 4 St. Mary's L.J. 291, 300–301 (1972) (emphasis in original).

**16.** 477 S.W.2d 538, 541–542 (Tex.1972).

been cited by this Court as authority for remanding a case simply to allow a party to try again.

Now, a week after *Doe 1*, the Court decides that it was in error. It should, instead, have vacated the court of appeals' judgment, not reversed it. So that is now the approach *du jour*. The Court finds authority for this procedure in Rule 60.2(f) of the Texas Rules of Appellate Procedure, which permits the Court to "vacate the lower court's judgment and remand the case for further proceedings in light of changes in the law". The rule does not exactly say that a new trial can be ordered, and we have never used the rule except to require the court of appeals to reconsider its ruling,[17] not to order a new trial. But as the Court subtly states, "the rule's plain language does not *preclude* us" from ordering a new trial.[18] Perhaps not, but judicial restraint should. The Court should not be ordering new trials just because it would like to see a different result. What "changes in the law" did *Doe 1* make? The Court went to great pains to base its analysis on existing law and cases from other states.[19] The only thing new in *Doe 1* is the Court's pronouncement that the Parental Notification Act means almost nothing, which was new indeed, and even startling, but can hardly be thought to have taken unfair advantage of minors applying under it. If anything, *Doe 1* makes it easier, not harder, for a minor to obtain a judicial waiver of parental notification. Dozens of states have had parental notification and consent statutes for decades. Many, as the separate opinions in *Doe 1* noted, have been construed by the United States Supreme Court. The Texas law was derived from those other states' laws, and there is nothing unique or unusual about it to justify a new trial in this case based on changes in the law.

The Court's interest in achieving a particular result in parental notification cases is distorting its jurisprudence. If the Legislature adds a new provision to the Deceptive Trade Practices Act, will the Court vacate the judgment in every case tried under the provision and order a new trial until it has had an opportunity to construe the new statute? No. If the Legislature creates a new cause of action or a new defense, will the Court remand every case tried on the new issues until it has issued an opinion in a case construing the new law? No, not even if there were no counterpart to the new law in American jurisprudence. It has never done so, and I am confident it never will. So what is the point of the Court's new remand procedure? In the Court's words: "This rule is particularly well-suited to situations such as this one, where courts must apply the requirements of a unique or novel statutory scheme."[20] It is the "such as" part of this sentence that I wonder about. Has there ever been another example "such as" this one in the history of Texas jurisprudence? No. What will one look like if it ever comes along? Can't say. Any clues? No. The remand in this case and in *Doe 1* is a very unique procedure, so unique in fact that it will never be followed except in parental notification cases, just as the Court's complete lack of deference to the trial court's ruling will be unique to these cases.

Repeatedly, the Court states that the trial court did not err in denying Doe's application, and if the trial court did not err in its ruling, the court of appeals certainly did not err in affirming it. When the Court reverses a judgment, it may remand in the interest of justice to give the parties an opportunity to present their case in light of the Court's opinion, as for example in *Boyles v. Kerr*[21] and *Transpor-*

---

17. *E.g., Welex v. Broom,* 816 S.W.2d 340 (Tex. 1991) (per curiam).

18. *Ante,* at 283 *(emphasis added).*

19. *Doe 1,* 19 S.W.2d at 256.

20. *Ante,* at 283.

21. 855 S.W.2d 593, 603 (Tex.1993).

*tation Insurance Co. v. Moriel.*[22] But the Court cannot say that there is anything wrong with the judgments in this case. On the evidence before them, the lower courts reached the right decisions. Nevertheless, the Court holds that Doe is entitled to a second opportunity to prove each of the three statutory bases she asserts for authorization to have an abortion without telling her parents. I examine the Court's holding as to each in turn.

## A

The Court reiterates its holding in *Doe 1* that a minor is "sufficiently well informed" to have an abortion without notice to her parents, within the meaning of the Act, if she has a modicum of information and understanding. She need only show that: (1) " 'she has obtained information from a health-care provider about the health risks associated with an abortion and that she understands those risks' "; (2) " 'she understands the alternatives to abortion and their implications' "; and (3) " 'she is also aware of the emotional and psychological aspects of undergoing an abortion' ".[23] The Court makes no mention of what evidence is necessary to show maturity.

As in *Doe 1*, the Court does not say whether Doe offered sufficient evidence or not. This omission, as I noted in *Doe 1*,[24] is purposeful. The Court did not apply its standard to the circumstances in *Doe 1* and does not do so in this case because the MEMBERS of the Majority cannot agree on what the minor has and has not proved. The minor and the trial court are directed to try again to do what this Court itself

cannot do: decide whether Doe is entitled to an abortion without telling her parents. This is what the Court calls "guidance".[25]

On remand, Doe and her attorney can follow the Court's checklist in *Doe 1* and attempt to meet their burden of proof. The trial court may yet determine that Doe is not fully credible or that she does not have even the minimal information and understanding the Court says the Act requires.

## B

The Court holds that a trial court's determination whether parental notification is not in a minor's best interest should be reviewed for abuse of discretion, and prescribes several factors to guide the trial court's determination.

## 1

I do not disagree with the Court that appellate review of a trial court's assessment of a minor's best interest should be for abuse of discretion, although I also agree with JUSTICE OWEN that the sufficiency of the evidence plays an important role in deciding whether a trial court has abused its discretion. It is an abuse of discretion, of course, for a court to rule without supporting evidence.[26]

I do not agree with the Court that this case must be reversed and remanded merely because the trial court did not have the benefit of today's opinion when it ruled. Just as a court that errs on the law abuses its discretion even when the law is unsettled,[27] a court that rules correctly has

**22.** 879 S.W.2d 10, 26 (Tex.1994).

**23.** *Ante*, at 281 (quoting *Doe I*, 19 S.W.2d at 256).

**24.** *Doe 1*, 19 S.W.2d at 269 (Hecht, J., dissenting).

**25.** *Id.* at 275.

**26.** *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex.1998) ("It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles,

*e.g., Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997), or to rule without supporting evidence, *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).").

**27.** *In re Missouri Pacific R.R. Co.*, 998 S.W.2d 212, 216 (Tex.1999) ("A trial court does not have the discretion to make an erroneous legal conclusion even in an unsettled area of law."); *Huie v. DeShazo*, 922 S.W.2d 920, 927–928 (Tex.1996) ("Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion.").

not abused its discretion simply because the law was not fully developed at the time. This Court does not hold that the trial court erred or abused its discretion, yet it reverses and remands the case for the trial court to re-evaluate Doe's best interest, now that the Court has provided enlightenment.[28] Notably, the Court does not suggest that Doe offer any additional evidence. The Court does not explain why it cannot reassess the evidence in light of its factors as well as the trial court— something it will certainly do in the next case. If the trial court on remand concludes, yes, it is still not in Doe's best interest not to notify her parents, and Doe again appeals, this Court will have to make the very determination it now directs the trial court to remake. Given the delay necessitated by a remand, the Court simply ought to say whether on this record Doe's proof satisfies its four factors, but it refuses to do so, apparently in hopes that the trial court will be pressured into granting Doe's application, sparing this Court the responsibility of a decision.

I would review the trial court's decision and hold that there was no abuse of discretion.

**2**

The Court derives from its opinion in *Holley v. Adams,*[29] a case involving the termination of a spouse's parental rights, four factors that trial courts should consider in deciding whether parental notification of a minor's wish to have an abortion is not in the minor's best interest. Any connection between a termination of parental rights and parental notification is not immediately apparent, and the Court does not bother to explain its rationale. The Court has simply sought out its only prior decision in any context listing "best interest" factors and attempted to apply it here. The factors the Court requires trial courts to consider are the following:

(1) the minor's emotional or physical needs; (2) the possibility of emotional or physical danger to the minor; (3) the stability of the minor's home and whether notification would cause irreparable harm to the family structure; and (4) the relationship between the parent and the minor and the effect of notification on that relationship. An additional factor that courts in other jurisdictions have considered is whether notification may lead the parents to withdraw emotional and financial support from the minor.

The Court's factors weigh heavily in favor of denying parents notice that their child is about to have an abortion. A minor who does not want her parents to know will almost always claim, as Doe has in this case, that her parents will be stunned to know that she is pregnant and considering an abortion, that she's afraid of how they will react, that she doesn't want to hurt them, that telling them will change their relationship. Are these emotional needs of the minor and this effect on the family relationship enough to show that notification is not in her best interest? The Court does not answer. But it is plain that almost any minor who wants an abortion without notifying her parents will, simply because of circumstances common to everyone in her position, be able to prove or go a long way toward proving that it is not in her best interest to notify her parents.

Indicative of the low standard the Court sets is its observation: "a minor's generalized fear of telling her parents does not, *by itself,* establish that non-notification would be in the minor's best interest."[30] The clear suggestion is that a minor's generalized fear of telling her parents, coupled with any other evidence, is enough to establish that non-notification would be in her best interest.

28. *Ante,* at 282.

29. 544 S.W.2d 367 (Tex.1976).

30. *Ante,* at 282 (emphasis added).

A minor's interests in these circumstances are not only immediate; they are profound and long-term. Her emotional distress in learning that she is pregnant when she does not wish to be, and her turmoil over trying to decide what to do, are certainly compounded by having to disclose her circumstances to her parents. For the short-term, keeping things secret may seem very attractive. But an abortion does not make the entire episode disappear as if it never happened. A minor must live with the knowledge that she excluded her parents from perhaps the most significant decision she made before adulthood. She may come to regret the decision, but even if she does not, excluding her parents from this very difficult part of her life necessarily affects the relationship. The long-term consequence to the familial relationship is far more significant in determining a minor's best interest than the likelihood that her parents' immediate reactions will be disappointment and even anger. A minor's best interest is difficult to define or predict, but it must be informed by deeper sensitivities than the factors the Court employs.

## C

The Court holds that Doe offered some evidence that telling her parents about her decision to have an abortion may lead to her physical or emotional abuse. That evidence consists entirely of the following three sentences of Doe's testimony concerning her father: "I'm scared of him. He's never beat me, he's hit me. He has a—he has just like slapped me and he has a temper and he might, I don't know, kick me out of the house or something." Doe did not say when her father hit or slapped her, whether recently or years before. She does not say on how many occasions he struck her, but leaves the distinct impression that it was not often. She does not say whether her father hit her out of anger or in disciplining her. For this testimony to be legal evidence that Doe's father may physically or emotionally abuse her if he is told of her desire to have an abortion shows again the low standards that this Court is convinced the Act contains.

Even assuming that Doe's brief testimony was some evidence of possible paternal abuse, surely it is no evidence of possible maternal abuse. The Act does not require that both parents be notified, only that one be told.[31] Thus, the Court holds that if one parent may be abusive, neither should be told. There is absolutely no basis for this holding anywhere in the statute.

I would hold that the trial court was correct in concluding that Doe offered no evidence of possible abuse.

## III

To make it more difficult for trial courts to deny applications under the Parental Notification Act, the Court insists that *specific* findings of fact and conclusions be made. This requirement is not in the statute, which states only that trial courts "shall issue written findings of fact and conclusions of law".[32] The Legislature knows how to require trial courts to make specific findings. For example, section 161.002 of the Family Code requires a trial court to make "specific findings" concerning a mother's efforts to locate and serve her child's biological father before his parental rights can be terminated. A trial court that denies relief in a child support review proceeding must explain its reasons with "specific findings".[33] A trial court can retain jurisdiction over a child who has been in the care of the Department of

---

31. Tex. Fam.Code § 33.002(a)(1)(A) (stating that a physician may not perform an abortion for a minor without, among other things, notice to "a parent"); § 33.003(a) (allowing a minor to apply for authorization to have an abortion "without notification to one of her parents").

32. Tex. Fam.Code § 33.003(h).

33. *Id.* § 233.027.

Protective and Regulatory Services if it makes "specific findings" regarding the grounds for the order.[34] The Parental Notification Act imposes no such requirement; it is entirely an invention of a Court that does not approve of trial courts' denying applications.

The Court even goes so far as to require trial courts to make findings regarding a minor's credibility. I am not aware that such a requirement has ever been imposed in any other area of Texas jurisprudence. It is ordinarily the province of the finder of fact to determine, without explanation, the credibility of witnesses. Must a court or jury explain why it chose to disbelieve a witness in any other proceeding? Of course not. Only in parental notification proceedings does the Court impose this unique requirement. The Court, of course, cites no authority for the requirement.

Less than three months ago the Court promulgated Form 2D attached to the Parental Notification Rules, which Rule 2.5(a) expressly permits trial courts to use in making their rulings. The form allows a trial court to check any basis found for granting the application and to add comments; it does not require findings for denying an application. At the time the Court issued the rules and forms it thought nothing more was required. But now that trial courts are actually denying applications, the Court insists on more details.

It is not at all clear what details the Court is calling for. What do findings on credibility look like, since they have never been made before? Will something like this do: "Doe squirmed in her chair. She seemed ill at ease. Her eyes shifted several times at critical points in her testimony. She seemed evasive." Is that what the Court means? How about: "By her youthful demeanor she did not seem to really understand the gravity of the situation. She seemed willing to say what it took to have her application granted." I am no more clear on what findings on maturity, well-informed, and abuse must contain. If a trial court determines that a minor's demeanor reflects an immaturity not apparent in her answers to questions, what does the court say? If a trial court concludes that a minor does not appear to have given careful thought to her decision even though she says she has and is able to recite a modicum of information, may the trial court make that finding? Will it be specific enough?

Without guidance to the trial courts, the Court ensures a steady flow of these cases onto its docket.

## IV

Although I share the trial court's concerns about constitutional problems with portions of the Parental Notification Act, I agree with the Court that the trial court erred in holding the Act unconstitutional on its own initiative. However, the as yet unchallenged secret nature of the proceedings is very troublesome. The Court has now construed the Act twice without more than a few pages of briefing hurriedly faxed to us by the minors' attorneys. The Court has had no input from the Attorney General or others involved in the passage of the Act. The Court is doing what it would not even consider in any other context: construing a statute without briefing and argument, without thoroughly researching the legislative history, and without affording interested parties to comment as amicus curiae. While I see no immediate solution to these problems, I think the Court will prove ill-served by having made its decisions in a vacuum.

\* \* \* \* \*

It is fast becoming apparent, now with *Doe 1* and *Doe 2*, that this Court does not intend to allow trial courts much discretion in denying applications under the Parental Notification Act. The Court has yet to

---

**34.** *Id.* § 263.402.

mention the purposes of the Act or how its decisions further them. The emerging truth is that minors in Texas will obtain abortions without notice to their parents as often as the Court wants them to, not when the Legislature has said they should.