NO. 07-06-0230-CR


 07-06-0231-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 30, 2007


______________________________



IGNACIO APOLONIO SARMIENTO, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;



NO. 3595, 3528; HONORABLE RON ENNS, JUDGE


_______________________________




Before CAMPBELL and HANCOCK and PIRTLE, JJ. 

OPINION


 Appellant Ignacio Apolonio Sarmiento brings companion appeals from the
adjudication of his guilt for the offenses of possession of a controlled substance and
delivery of a controlled substance. Agreeing with appointed counsel's conclusion the
record fails to show any meritorious issue which would support the appeals, we affirm the
trial court's judgments. 

 In a March 2004 indictment appellant was charged with possessing between four
and two hundred grams of cocaine. He pled guilty the same month and adjudication of
guilt was deferred for a period of seven years in accordance with a plea agreement. A July
2004 indictment alleged appellant delivered cocaine in the same quantity range. Appellant
pled guilty to this offense in August 2004 in exchange for a recommendation the
adjudication of guilt be deferred. The trial court again deferred adjudication of guilt and
placed appellant under community supervision for seven years.

 The State moved to adjudicate appellant's guilt in each case in January 2006,
alleging he violated the conditions of his community supervision by committing two new
drug-related offenses. At the joint hearing on these motions held in May 2006, through an
interpreter appellant pled not true to the violations alleged. The State abandoned the
second violation alleged in each motion, proceeding only on the allegation appellant
delivered a controlled substance on January 22, 2006. The trial court heard testimony
from Bobby Tyler of the Department of Public Safety and Tommy Hinson, a drug user who
worked with Tyler in conducting controlled buys of drugs. Hinson purchased cocaine from
appellant at appellant's home while Tyler listened to the transaction using a transmitter
carried by Hinson. Tyler did not see the transaction, but did see appellant briefly outside
the house. 

 The trial court found appellant violated the conditions of his community supervision
and found appellant guilty in each case. The court assessed punishment at 15 years
confinement for possession in cause number 3528, and 65 years confinement for delivery
of a controlled substance in cause number 3595. Appellant perfected appeal from each
judgment. 

 Appellant's appointed counsel has filed a motion to withdraw and a brief in support
pursuant to Anders v. California, 386 U.S. 738, 744-745, 87 S.Ct. 1396, 18 L.Ed.2d 493
(1967), in which he certifies that he has searched the record and, in his professional
opinion, under the controlling authorities and facts of this case, there is no reversible error
or legitimate grounds upon which a non-frivolous appeal can arguably be predicated. The
brief discusses the procedural history of the case and the evidence presented at trial. 
Counsel has certified that a copy of the Anders brief and motion to withdraw have been
served on appellant, and that counsel has advised appellant of his right to review the
record and file a pro se response. Johnson v. State, 885 S.W.2d 641, 645 (Tex.App.-
Waco 1994, pet. ref'd). By letter, this court also notified appellant of his opportunity to
submit a response to the Anders brief and motion to withdraw filed by his counsel.
Counsel's brief does not discuss potential issues with an explanation of why they could not
support the appeal. Appellant has filed a response raising several potential issues. The
State has not filed a brief.

 In conformity with the standards set out by the United States Supreme Court, we will
not rule on the motion to withdraw until we have independently examined the record. 
Nichols v. State, 954 S.W.2d 83, 86 (Tex.App.-San Antonio 1997, no pet.). If this court
determines the appeal has merit, we will remand it to the trial court for appointment of new
counsel. See Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.1991).

 Appellant's pro se response initially complains his appellate attorney failed to
respond to appellant's request for a copy of the record. Counsel's letter to appellant
explaining his right to file a pro se response states counsel provided a copy of the
reporter's record from the adjudication hearing. Appellant also presents complaints
regarding his pleas of guilty when adjudication was deferred. As no appeal was perfected
from the decision to defer adjudication of guilt, appellant may not now raise errors that
occurred in that proceeding. Hargesheimer v. State, 182 S.W.3d 906, 909 (Tex.Crim.App.
2006); Manuel v. State, 994 S.W.2d 658, 661-62 (Tex.Crim.App. 1999). (1) After an
adjudication of guilt, appeal may be brought challenging issues arising at the subsequent
punishment hearing, including claims of ineffective assistance of counsel. Kirtley v. State,
56 S.W.3d 48, 51 (Tex.Crim.App. 2001). 

 Appellant complains he has been denied reasonably effective assistance of counsel
because his counsel failed to secure the services of an interpreter from the Mexican
Consulate and the interpreter used in the trial court was not qualified. To establish denial
of the effective assistance of trial counsel an appellant must establish (1) his counsel's
performance was deficient, and (2) the deficient performance prejudiced the defense. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),
Hernandez v. State, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). This standard applies to
claims arising from a noncapital sentencing phase. Hernandez v. State, 988 S.W.2d 770,
772 (Tex.Crim.App. 1999). The first component of Strickland is met by showing trial
counsel made errors so significant that he was not functioning as the counsel guaranteed
by the Sixth Amendment to the United States Constitution. 466 U.S. at 687. To show
prejudice, the defendant must show there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. A
reasonable probability is a probability sufficient to undermine confidence in the outcome. 
Id. at 694. A claim of ineffective assistance of counsel must be affirmatively supported by
the record. Tabora v. State, 14 S.W.3d 332, 336 (Tex.App.-Houston [14th Dist.] 2000, no
pet.). 

 We initially note that appellant told the trial court following his sentencing that he
was satisfied with the representation of the retained counsel who represented him at the
adjudication proceeding. The record also shows an interpreter was appointed and sworn
at that proceeding pursuant to article 38.30(a) of the Code of Criminal Procedure. Tex.
Code Crim. Proc. Ann. art. 38.30(a) (Vernon 2005). There is authority that a foreign
national (2)
 who has been arrested must be advised of his right to contact his consulate. 
Maldonado v. State, 998 S.W.2d 239, 247 (Tex.Crim.App. 1999) (citing Vienna Convention
on Consular Affairs, art. 36(1)(b), 21 U.S.T. at 100-101; 595 U.N.T.S. at 292). The record
before us does not contain any evidence demonstrating whether appellant was informed
of his right to contact the Mexican Consulate. In any event, however, we find no authority
appellant was entitled to the services of an interpreter from the Mexican Consulate. (3) 
Appellant's contention the interpreter used in the trial court was not qualified refers to the
requirements of article 38.31(g) of the Code of Criminal Procedure. Those requirements
apply to interpreters for deaf persons. Tex. Code Crim. Proc. Ann. art. 38.31(g) (Vernon
2005). The record before us does not affirmatively support an arguably meritorious
contention that appellant's counsel was deficient because of a failure to obtain an
interpreter from the consulate for the adjudication proceeding. 

 Our review convinces us that appellate counsel conducted a complete analysis of
the record. We have also made an independent examination of the record to determine
whether there are any non-frivolous grounds on which an appeal could arguably be
founded. See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); 
Stafford, 813 S.W.2d at 511. We agree it presents no meritorious issue which would
support an appeal. Accordingly, we grant counsel's motion to withdraw (4) and we affirm
both judgments of the trial court. 

 James T. Campbell

 Justice

Publish.
1. Additionally, the adjudication of appellant's guilt occurred before the effective date
of Senate Bill 909 in the 80th Legislature, which authorizes appeals from the decision to
adjudicate guilt. Act of June 15, 2007, 80th Leg. R.S., Ch. 1308, § 1, 2007 Tex. Gen. Laws
____ (amending Tex. Code Crim. Proc. art. 42.12, § 5).
2. Appellant asserts on appeal that he is a Mexican citizen, and a Department of
Public Safety arrest report contained in the record indicates that fact. Offense reports
appearing in the record also show appellant had a residence in Texas, and possessed a
Texas driver's license and a social security number. For purposes of this opinion, we
assume appellant is a foreign national. 

3. See Sanchez-Llamas v. Oregon, ___ U.S. ___, 126 S.Ct. 2669, 165 L.Ed.2d. 2669
(2006) (addressing judicial enforcement of Vienna Convention on Consular Affairs); Sierra
v. State, 218 S.W.3d 85 (Tex.Crim.App. 2007) (same). 
4. In granting counsel's motion to withdraw, however, we remind counsel to insure
that he has complied with the "educational"duty to inform appellant of his right to file a pro
se petition for discretionary review in the Court of Criminal Appeals. Ex parte Owens, 206
S.W.3d 670 (Tex.Crim.App. 2006).



associate judge then found the evidence sufficient, terminated the parental
rights of S.M.L.’s parents, and appointed the Department permanent sole managing
conservator of S.M.L. An order reflecting the associate judge’s judgment was signed on
March 5, 2008, and filed on March 10, 2008.


 Pursuant to that order, the Department
continued S.M.L.’s placement with Appellants. 
          Subsequent to the associate judge’s oral pronouncement of judgment, but prior to
the entry of a written order, a Department employee observed Appellants permitting
contact between S.M.L. and his parents in violation of the order of January 10.


 
Thereafter, at the discretion of the Department, S.M.L. was removed from Appellants’
residence and, on February 25, he was placed in a second foster home studied and
approved by the Department for adoption. 
          Two days after entry of the associate judge’s written order of termination, on March
7, 2008, Appellants filed a petition to intervene in the Department’s termination suit. The
petition sought to have Appellants appointed as S.M.L.’s joint managing conservators, with
the exclusive right to designate the primary residence of the child, in addition to an order
granting Appellants possession of or access to the child.


 
          On July 22, Appellants filed a first amended petition in intervention and, in addition
to previous remedies, requested adoption. On August 6, 2008, the associate judge issued
an order granting the Department’s motion to strike Appellants’ original petition in
intervention filed March 7. Thereafter, Appellants sought a de novo hearing before the
referring court.



           On August 29, 2008, S.M.L.’s new foster parents, with the Department’s consent,
filed their original petition to adopt S.M.L. in the 237th District Court in Lubbock County. 
They also sought to intervene in the Department’s suit to terminate the parental rights of
S.M.L.’s parents filed in Floyd County.
          In September, the associate judge reviewed and approved a placement report
describing a permanency plan calling for S.M.L.’s adoption while continuing all previous
orders without modification. On October 14, Appellants filed a second amended original
petition in intervention in the Floyd County proceeding. On December 3, 2008, the trial
court “reheard” the Department’s termination suit. With all parties present, the trial court
implicitly overruled pending objections to jurisdiction and standing, and proceeded to hear
the merits of the case. In an order issued January 5, 2009, the trial court affirmed the
associate judge’s January 31, 2008 ruling. On January 26, 2009, Appellants filed their
notice of appeal contesting that order.
Standard of Review
          A trial court has broad discretion to determine issues related to conservatorship,
visitation, and possession, see In re Doe 2, 19 S.W.3d 278, 281 (Tex. 2000); Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982), and the decision of the court may be reversed
only if it appears that the court abused its discretion in light of the record as a whole. Id. 
A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference
to any guiding rules or principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
See In Interest of Doe, 917 S.W.2d 139, 141 (Tex.App.–Amarillo 1996, writ denied). 
Furthermore, we may not reverse the trial court’s judgment simply because we might
disagree with the outcome. Rather, before a decision of the trial court may be reversed
we must conclude that the decision lacked basis in fact or law or involved a misapplication
of fact to law. In re C.R.T., 61 S.W.3d 62, 65 (Tex.App.–Amarillo 2001, pet. denied).
          When determining issues related to conservatorship or possession of and access
to the child, the best interest of the child is the primary consideration. Tex. Fam. Code
Ann. § 153.002 (Vernon 2008); See In re M.S., 115 S.W.3d 534, 547 (Tex. 2003). In
determining the best interest of the child, the court may consider several non-exclusive
factors: (1) the desires of the child; (2) the emotional and physical needs of the child now
and in the future; (3) the emotional and physical danger to the child now and in the future;
(4) the parenting abilities of the parties seeking conservatorship; (5) the programs available
to assist those persons; (6) the plans for the child by the parties seeking conservatorship;
and (7) the stability of the home or proposed placement. Holley v. Adams, 544 S.W.2d
367, 372 (1976). 
Analysis
          S.M.L. was originally removed from the custody of his parents in January 2007,
because the Department had serious concerns about his safety and well-being while in
their presence. At that time, the child was placed in the home of Appellants, subject to a
written safety plan stating that Appellants would not allow the parents to have any contact
with the child unless supervised by the Department. In March 2007, Appellants allowed
the parents to have unsupervised possession of the child. During that period of
unsupervised possession, the mother was arrested for domestic violence against the father
and the child was once again removed by the Department. 
          In September 2007, following the completion of a home study and anger
management classes, the child was again placed in Appellants’ custody. Again, Appellants
signed a safety plan agreeing to not allow the parents to have any contact with the child
unless supervised by the Department. In January 2008, by order of the court, Appellants
were specifically prohibited from allowing any “access, communication, or contact” between
S.M.L. and his parents, except under the direct supervision and monitoring of the
Department.
          After the parents stopped participating in services offered by the Department, the
decision was made to seek termination of their parental rights. Following the execution of
voluntary relinquishments of paternity, the associate judge terminated the parental rights
of the mother and father and appointed the Department as the child’s sole managing
conservator. At the time of that proceeding, the child was in Appellants’ custody and the
Department’s plan was for them to adopt the child. A short time later, Appellants were
observed allowing the parents unsupervised contact. This unauthorized contact prompted
the Department to again remove the child from Appellants’ home and place him in new
foster care.
          In addition to hearing testimony concerning the child’s care and supervision while
in the custody of Appellants, the trial court also heard testimony concerning the child’s new
placement. A case worker testified that the child had bonded with the new placement
parents, that their care and supervision was appropriate, that the child referred to them as
“Momma” and “Daddy,” that they had initiated adoption proceedings, and that it was in the
child’s best interest that he remain in the new placement.
          Given the instances of Appellants’ failure to follow the safety plans adopted for the
child, their inability to recognize the danger presented to the child by parental contact, as
well as the prospective plans for the child, we cannot say that the trial court’s decision to
not appoint Appellants as managing conservators or to order possession or access was 
arbitrary, unreasonable, or without reference to any guiding rules or principles. 
Accordingly, Appellants’ sole issue is overruled.
           CONCLUSION
          The trial court’s judgment is affirmed.
 
                                                                           Patrick A. Pirtle

                                                                                 Justice